UNITED STATES, Appellee

v

VICTOR H. CARY, Captain, U. S. Army, Appellant

9 USCMA 348, 26 CMR 128

No. 9742

Decided June 13, 1958

*William G. Downey, Jr., Esquire*, and *Captain John F. Christensen* argued the cause for Appellant, Accused.

*First Lieutenant Chester F. Relyea* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee, Lieutenant Colonel Thomas J. Newton, and Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused officer was tried and convicted by general court-martial convened at Bushey, Hertfordshire, England, for the offense of signing a false official document with intent to deceive, in violation of Articles 107 and 133, Uniform Code of Military Justice, 10 USC §§ 907 and 933, respectively. Several issues are presented in this appeal.

In the view we take of the case, however, it is only necessary to consider the issue relating to the introduction of evidence of the accused's juvenile conviction for the offense of burglary. This issue is not one of first impression with this Court.

In United States v Roark, 8 USCMA 279, 24 CMR 89, the prosecution, in an effort to impeach the accused's credibility, persistently attempted to interrogate the accused with respect to a committal at one time by a state juvenile court to a training school. The law officer permitted inquiry into prior acts of misconduct by the accused during his minority which might have involved moral turpitude, including those which were the cause of the juvenile court proceedings. This Court held that the introduction of evidence of the juvenile court proceedings was error which prejudiced the substantial rights of the accused. After an exhaustive discussion of the various state statutes and authorities dealing with juvenile offenders and their offenses, we adopted what we consider the better rule which forbids the admissibility of such evidence for purposes of impeachment. In the course of our opinion, we had occasion to remark that:

". . . The guiding social policy of the juvenile delinquency statutes which exist in better than half of the jurisdictions in this country is to reform the juvenile offender's way-ward propensities rather than to punish him. If the rehabilitation process is successful, a fresh start for the minor is envisioned. To achieve this end, provisions have been incorporated in practically all such statutes that records of adjudications or convictions dealing with the disposition of a child are inadmissible in other cases. Other States hold that oral evidence to prove the adjudication or any evidence taken in the proceeding will not be admissible thereafter in the proceedings of other courts. The clear design in laying down those rules of exclusion is that the indiscretions of youth will not be used to brand him in later life, as happens in the case of adult recidivists."[1] [Cf. United States v Shaughnessy, 8 USCMA 416, 24 CMR 226.]

We conclude, therefore, that under the facts and circumstances of the case at bar, the introduction of evidence of the accused's juvenile conviction and the court's consideration of such evidence requires reversal of the conviction. In view of the very distinct possibility that the other errors assigned in this appeal may not arise in the event a rehearing is ordered, we deem it unnecessary to consider such additional errors at this time. The decision of the board of review is reversed. A rehearing may be ordered.

QUINN, Chief Judge (concurring):

One of the claims of error advanced

---

[1] In the instant case, the accused had been found guilty in the Superior Court of the State of California, in and for the County of Los Angeles, on June 23, 1937, of an offense described as "burglary of the second degree." Official records disclose that at the time of the accused's conviction, he had recently become sixteen years of age. He was committed to the Preston School of Industry, from which he subsequently received an honorable discharge. Section 735 of the Welfare and Institutions Code of the State of California provides that persons under the age of twenty-one years, shall be adjudged by the court "a ward of the juvenile court." Section 571 of the Code confers jurisdiction in each Superior Court of the State to sit as a "juvenile court." The order of the court adjudging a person to be a ward of the juvenile court is not deemed to be a conviction of crime. (Section 736 of the Code.) Pursuant to Section 1000 of the Code, various institutions are designated as correctional schools, among which is the Preston School of Industry. These schools are maintained by the State "for the reception of wards of the juvenile court and other persons committed to the Youth Authority." Persons honorably dismissed from these correctional institutions "shall thereafter be released from all penalties or disabilities resulting from the offenses for which they were committed." Upon the final discharge or dismissal of any such person, the court "shall thereupon dismiss the accusation and the action pending against such person." (Section 1179, Code, supra.)

by the accused is the inadequacy of his counsel at the trial. De- fense counsel's failure to object to the evidence of a juvenile conviction is included in the particularization of incompetency. In my opinion, therefore, it is inappropriate to rely upon the failure to object as a basis for refusing to consider the claim of error.

The case turned on the accused's intent. The accused denied that he entertained an intent to de- ceive when he gave the false answer in his personal history form. He testified that he had discussed the matter with Major Jones, his commanding officer, and as a result of the discussion concluded that he should answer "No" to the question on whether he had ever been arrested or convicted for other than a traffic offense. He attempted to obtain corroboration from the Major, but the attempt was not successful. The failure of complete corroboration was patently the pivotal point in the case. Anything which tilted the scale of credibility against the accused was virtually certain to produce a conviction. In these circumstances the Government's use of the juvenile commitment proceedings could easily have weighted the balance against the accused. The question then is whether use of the proceedings was proper.

In United States v Roark, 8 USCMA 279, 24 CMR 89, we held that juvenile proceedings could not be used as evidence against an accused. Of course this does not mean that an accused can pervert the public policy that underlies the rule to protect himself against contradiction of his testimonial untruths. United States v Trudeau, 8 USCMA 22, 23 CMR 246. But that is not the situation here. Nothing that the accused testified to required contradiction through disclosure of the proceedings resulting in his commitment to the Preston School. In my opinion, therefore, the accused was prejudiced by the erroneous admission of evidence relating to earlier juvenile proceedings against him. I join in reversing the decision of the board of review and in ordering a rehearing.

LATIMER, Judge (dissenting):

I dissent.

I need not decide whether this was in fact a juvenile conviction, for there are several reasons why I believe the results reached by the Court in this instance are erroneous. I will discuss only three. First, the evidence was introduced without any objection on the part of accused, and he is estopped from raising the error on appeal. Second, the evidence was admissible to rebut testimony given by the accused that he acted under a mistake and, therefore, possessed no criminal intent to deceive. Third, even assuming error, there was not the slightest bit of prejudice to the accused.

I

In United States v Roark, 8 USCMA 279, 24 CMR 89, we held that evidence showing a juvenile adjudi- cation of delinquency was inadmissible to impeach the accused when he became a witness in his own behalf. In that case, defense counsel vigorously opposed the reception into evidence of the juvenile proceedings. Therefore, the matter was fully and fairly raised at the trial level and, as it developed, it became apparent that the evidence was offered for impeachment purposes only. Here we have an entirely different situation, for it is conceded that trial defense counsel raised no objection to the evidence and seemingly thought it could be used to the advantage of his client. When trial counsel cross-examined the accused upon the matter there was no effort to bar the testimony, and when the documentary evidence was proffered defense counsel stated, "No objection." The law officer intervened to ask, "There is no objection by the defense?" and defense counsel repeated, "No objection." Under those circumstances, I would rely on the rule we announced in United States v Clark, 4 USCMA 650, 16 CMR 224. There we stated:

"The accused interposed no objections to the admission of the evidence. Consequently, we need not decide whether he had a right, as he now contends, to object to admission of the exhibits on the ground that

they do not show the exact nature of the former offenses. Except in unusual cases, a failure to object to admission of evidence on a proper ground prevents the accused from raising the issue on appeal."

The exceptional case looms only when it may be held that the failure to object might result in a manifest miscarriage of justice, and that result is not present in this instance. United States v Fisher, 4 USCMA 152, 15 CMR 152; United States v Masusock, 1 USCMA 32, 1 CMR 32.

The Chief Judge raises the point that the accused, having listed this failure to object as one of a number of incidents which allegedly raise an issue of inadequacy of counsel, the doctrine of waiver should not be considered. Both accused and his defense counsel submitted affidavits to this Court, joining issue upon the claim of inadequacy of representation. Defense counsel avers that his overall trial strategy was developed with the consent of the accused before trial, the theory being that if counsel did not appear to be keeping information from the court members and the accused made a clean breast of his past life, the court would not be inclined to believe he intended to deceive the United States when he signed the false official document in question. The accused in his affidavit admits he concurred with this theory of defense. That indicates to me accused's affirmative consent to defensible trial tactics. But, in addition, it is worthy of note that the mere contention on appeal of inadequacy is not tantamount to proof, and my study of the record of trial and the appellate papers leads me unalterably to conclude that the claim of improper representation is entirely without foundation.

## II

My second reason for dissenting is founded on my belief that the accused by his own testimony made the record of the prior juvenile proceedings admissible. He was charged with making a false statement in an official questionnaire entitled "STATEMENT OF PERSONAL HISTORY." The question was, "Have you ever been arrested, indicted, or courtmartialed for any reason other than for minor traffic violations?" The Government's proof consisted entirely of documentary evidence. A prima facie case was established by the introduction of the personal history document, a stipulation by the accused that he had affixed his signature to the document beneath the standard affirmation that "the information contained herein is the truth to the best of my knowledge and belief," and certified copies of a complaint and warrant of arrest in the case of United States v Victor H. Cary, No. 162, before the United States District Court for the Southern District of West Virginia from the Clerk of that court.

The accused took the stand to explain his reasons for giving the false answer. Stated generally, he related that, subsequent to his arrest and conviction and while attending the University of California Law School, he had gone before the Bar Examiners of the State of California to ask if his encounter with the law would prevent him from taking the bar examination. That body, according to his testimony, gave him clearance. Thus, he explained, he was under the "dubious" impression that he was not obligated to answer in the affirmative at the time he filled out his personal history statement. He added that he explained his predicament to his former battery commander and, to the best of his knowledge, that officer had acquiesced in his action—a fact which was denied by the officer. From those facts, if the accused advanced any theory of defense it must find its root in the rule that an honest mistake of law or fact rebuts any specific criminal intent. I have a great deal of difficulty in understanding what mistake he relies upon, but I will assume he was attempting to show he acted innocently because of his reliance upon the opinion of others.

Contrary to the thrust of the majority opinion, I do not believe trial counsel was using the California court papers to impeach the accused by proving a conviction of an offense involving moral turpitude. His cross-examination of the accused shows another purpose and

that was to rebut the Captain's contention of mistake. The reference to the juvenile arrest, plea and sentence was preliminary to establishing that upon the same form which is the base for this conviction, the accused made other false representations. In one entry he claimed to have attended Roosevelt Junior High School in San Francisco, California, from 1937 to 1938, but he made no mention of his attendance at the California Youth Authority School, known as the Preston School of Industry. It was to show deception in those representations that trial counsel resorted to the evidence of previous misconduct. Certainly, if an accused on direct examination states he made one false entry in a form by mistake, he is subject to cross-examination on other entries. The theory which permits exploration of all information furnished is that an honest mistake on one entry might be plausible, but that contention is weakened substantially when other entries are proven untrue. While there are safeguards thrown around a minor to prevent the mistakes of his youth from haunting him later in life, those protections do not reach the point where they can be used to prevent the Government from producing evidence on an essential element of a subsequent crime. In United States v Roark, supra, we denied the Government the right to use a juvenile adjudication for impeachment purposes but it must be remembered that the evidence was not otherwise admissible. Here the Government was required to prove specific intent and the accused, in order to impress the court with the hypothesis he innocently submitted false information in only one regard, testified that all other statements in the form were true. Trial counsel was not required to leave that impression with the court, and his cross-examination developed that the accused had been sent to the Preston School for about sixteen months during 1937 and 1938, which covered the same period of time his personal history reflected that he was in junior high school in San Francisco, California. When confronted with that inconsistency, accused then admitted he had not truly reflected his educational background, but his explanation of that second false entry was that it was difficult for him to remember his schooling since it was "sporadic."

That the doctrine of United States v Roark, supra, should not be applied in all instances may be illustrated by the following example. If a member of the Armed Forces goes absent without authority and, in order to establish his intent to return, he offers an explanation for his long absence by contending he was in a hospital, surely the Government should be permitted to show he was committed to a reform school for minors during that period. In United States v Myhre, 9 USCMA 32, 25 CMR 294, we permitted the use of "Youthful Offenders" proceedings to show an accused was absent without authority because of his own misconduct and other courts have not barred evidence of juvenile delinquencies when its rejection would permit an accused to deceive the court.

In State v Marinski, 139 Ohio St 559, 41 NE2d 387, the Supreme Court of Ohio had this to say on the subject:

"That this is a salutary statute properly designed to afford some measure of protection from the indiscretions of youth is beyond cavil. However, it is a vastly different matter to permit an interpretation that would enable a defendant to employ the statute for the purpose of deception and to accomplish a miscarriage of justice. After all, a trial before a judicial tribunal is primarily a truth-determining process, and if it in any sense loses its character as such, it becomes the veriest sort of a mockery. It must be remembered that it was this defendant himself who not only offered to tell but insisted upon narrating the story of his previous years. To place himself in a favorable light before the court and jury it was necessary for him to tell but part of his history and conceal the remainder. This he did. When this challenge confronted the court and the prosecuting attorney, did this statute render them impotent in their duty to reveal the truth? The participating members of this court are unanimously of the opinion

that it did not. The cross-examination was proper."

Therefore, on this aspect of my dissent I would conclude the accused could not plead he made a mistake and then prevent the Government from showing to the contrary. To permit him to do that would close the door on legitimate cross-examination.

## III

Lastly, in testing for prejudice, I am willing to assume for the sake of argument that the admission of the testimony was erroneous. Furthermore, I will rest this portion of my dissent on the testimony of the accused alone. He admits representing to the Government that he had never been arrested for any offense other than a minor traffic violation. On his history form, he had certified to that effect, but this is part of his testimony at trial:

"Q Capt. Cary, you have told the court then that you were arrested on May 20, 1949, is that correct?
"A Yes, Sir.
"Q In the San Francisco United States Marshal's Office?
"A Right.
"Q You understood then that you were arrested, didn't you?
"A Yes.
"Q And you understand the simple language on that form, don't you, 398: 'Have you ever been arrested, indicted or court-martialed'.
"A Yes, I understand.
"Q You understood that then, didn't you—I believe you told the court that you were a law student at the time you signed it?
"A Absolutely correct.
"Q And as a law student you should know what the word 'arrest' means, shouldn't you?
"A Yes, I know what the word 'arrest' means.
"Q Then you knew at the time you signed this that you had been arrested, didn't you?
"A Yes, I did know.
"Q You deliberately said 'No', didn't you?
"A Yes, I put a 'No' on it.

"Q Now you told the court that you were arrested in California for this—what were you arrested for, Captain?
"A I was arrested for uttering a check, cashing a check.
"Q Were you also convicted?
"A Well, I didn't get any—you mean was I confined or given any term?
"Q I wasn't asking you that; I asked you: Were you convicted of forging the check of which you were arrested.
"A Yes, I was found guilty.
"Q As a matter of fact you pled guilty, didn't you?
"A Yes."

That testimony to me constitutes a judicial confession of signing a false official document and leaves for consideration only the accused's intent to deceive. On that element he testified that he knew the statement was forwarded to a security agency for clearance purposes and that his answers were material to obtain clearance. According to his testimony, they were of such importance that he sought out independent advice before answering the question which was the basis for his conviction. He was a law student who had proceeded far enough with his education to consider taking a bar examination. He conceded he was arrested in California for forging two checks while residing in West Virginia. He entered a plea of guilty before a Federal Court to two counts of forgery and was placed on probation for three years. He consulted his battery commander, but he does not say that that officer misled him into believing that he could truthfully aver he had not been arrested. He could not give the substance of his conversation with his commander, and I am sure that with $1,200 to pay back in the form of restitution, he could neither have forgotten the incident nor honestly have believed that his prior arrest and conviction were wiped out by his subsequent good behavior.

In the light of accused's own admissions, any evidence of the commission of an offense some seventeen years earlier would have no impact on the court members. In three California cases considering this problem, People v

Goodwin, 105 Cal App 122, 286 P 1087; People v Hoffman, 199 Cal 155, 248 P 504; and People v Maloney, 92 Cal App 371, 268 P 472, it was held that any error in the admission of juvenile proceedings was not prejudicial. I take the same view in the case at bar.

I would affirm the decision of the board of review.