UNITED STATES, Appellant

v

RICHARD R. KINDLER, Airman Second Class,
U. S. Air Force, Appellee

14 USCMA 394, 34 CMR 174

395

No. 17,151

March 6, 1964

Major Neil Kasdan argued the cause for Appellant, United States. With him on the brief was Colonel Emanuel Lewis.

Major William A. Crawford, Jr., argued the cause for Appellee, Accused. With him on the brief was Colonel Daniel E. Henderson, Jr.

## Opinion of the Court

QUINN, Chief Judge:

Charged with sodomy, the accused, who was twenty years of age, was convicted of assault with intent to commit sodomy, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, by performing certain acts specified in the findings. The convening authority approved only so much of the court-martial's findings of guilty as found that the accused "committed an indecent, lewd, and lascivious act" in the manner specified in the findings. He approved the sentence, which included a bad-conduct discharge and confinement at hard labor for one year. On review, the board of review reversed the conviction and directed a rehearing on the charge approved by the convening authority, on the ground the accused was prejudiced by trial counsel's cross-examination of accused about other homosexual acts committed by him. Pursuant to the provisions of Article 67(b)(2) of the Uniform Code, 10 USC § 867, The Judge Advocate General of the Air Force certified the case to this Court for a review of the following questions:

1. Was the board of review correct in its determination that assault with intent to commit sodomy is not a lesser included offense of sodomy which is alleged in "short form" pleadings?

2. If the answer to the first question is in the affirmative, was the board of review correct in ordering a rehearing on a specification alleging the commission of indecent, lewd, and lascivious acts with another?

3. Was the board of review correct in its determination that under

396

the circumstances of this case it was error to permit cross-examination of accused in regard to juvenile misconduct not resulting in conviction?

4. Was the board of review correct in its determination that accused's testimony that he was "sexually normal" opened the door to permit cross-examination regarding the .30 caliber shell incident?

Besides the language quoted above, the action of the convening authority includes the words "committing an assault . . . with intent to commit sodomy." If these words are given full effect, the offense approved by the convening authority would actually be the same as that found by the court-martial. There is, therefore, an ambiguity in the convening authority's action. However, the record shows the staff judge advocate recommended to the convening authority he "spell out precisely" that the offense approved by him was "the commission of an indecent, lewd, and lascivious act." The form of action prepared by the staff judge advocate for that purpose was approved by the convening authority without change.

Considering the ambiguity of the convening authority's action in light of the staff judge advocate's █ review, there is no room to doubt that the offense approved by the convening authority was not assault with the intent to commit sodomy, but the commission of a lewd, indecent, and lascivious act. United States v Grice, 8 USCMA 166, 23 CMR 390; cf. United States v Nastro, 7 USCMA 373, 22 CMR 163. The parts of the victim's body involved in the approved offense, as detailed in the convening authority's action, are the same as those in a completed act of sodomy. The approved offense, therefore, embraces the acts found by the court-martial, and is lesser included in the offense charged. United States v Butts, 14 CMR 596, footnote 1, petition denied, 4 USCMA 723, 15 CMR 431; United States v Jones, 13 CMR 420. As a result, consideration of the lesser offense issue presented by the first and second certified questions is academic.

Since we do not favor abstract consideration of issues, we pass over these questions. See United States v Harris, 10 USCMA 69, 27 CMR 143; cf. United States v Strand, 6 USCMA 297, 305, 20 CMR 13. We turn, therefore, to the third issue.

In United States v Robertson, 14 USCMA 328, 34 CMR 108, we held that, for the purpose of impeaching his general veracity, an accused cannot be cross-examined about other acts of misconduct which were not followed by conviction. As far as the record of trial shows, the homosexual acts about which the accused was questioned were not followed by conviction. Unless the accused in his direct examination opened the door to inquiry about these acts, the Government could not question him about them. See United States v Pavoni, 5 USCMA 591, 594, 18 CMR 215; United States v Cary, 9 USCMA 348, 351, 26 CMR 128. The board of review held the accused's testimony was exclusively "oriented to that period of time . . . subsequent to his entry into the military service," and he was not subject to cross-examination about acts of sodomy committed by him prior to that time. The Government attacks the validity of this conclusion. It contends the accused testified to "sexual purity" and sexual normalcy throughout "his entire past," and, therefore, opened himself to impeachment by evidence of acts committed before he entered the service. Whether this is a correct construction of the accused's testimony need not detain us. We are satisfied the evidence was properly admitted.

The accused was charged with committing an act of sodomy on January 2, 1963, on the person of a fellow airman, while the latter was asleep. He testified in his own defense. He began his direct examination with a flat denial he "was guilty as charged." He offered two reasons to support his denial. First, he testified he had done so much drinking on New Year's Eve and throughout New Year's Day that it was "physically . . . impossible to do such a thing from the condition . . . [he] was [in] that night."

397

He just "didn't know what . . . [the charge] was all about," until confronted with the allegations at the Air Police station. His second reason was that he was not "a queer" and was "just as normal as anybody else." In that connection, the accused testified on direct examination as follows:

"Q. You mentioned going to church here sometime back in your testimony and you're a religious man and believe in God. What is your religion? Does your religion tell you anything as far as an act like this would be concerned?

"A. It's not right. It's a sin to do this. Normal people don't do it.

"Q. They don't do this sort of thing.

"A. No.

"Q. You would consider it a sin.

"A. Yes.

"Q. Do you have anything else that you want to tell this court here that you want them to consider here prior to closing to arrive at a finding in this case? Is there anything else you want to tell them they should know?

"A. I'm just as normal as anybody else around here. I hope to get married some day and have a family just like anybody else. I'm not a homosexual. I'm not a queer. I just don't have any desire on that line at all. I want to have a family. I'm just as normal as anybody else. I know I'm not a queer as they stated to that effect.

"Q. Airman Kindler, I want to ask you this question here: You state that you are not a queer and that you want to get married. You feel that you're as normal as anybody else. Do I understand that you are telling us this is the way you are right now? This is the way you are as a member of the Air Force?

"A. Yes, it is.

"Q. This is what you are right now, a perfectly normal human being right now today, is this correct?

"A. Yes, sir, I am.

"Q. And that you were not differ-ent on January 1, you were still normal then?

"A. Yes.

"Q. And you're not guilty of this act.

"A. No, I'm not guilty.

"Q. Let me ask you this question: Since you have been an adult and since you have been in the Air Force here—when did you come in the Air Force?

"A. November 29th, 1961.

"Q. Since you have been in the Air Force here, have you ever engaged in any homosexual activities or anything like this with any male adult to your knowledge?

"A. No, sir, I haven't. I have never tried. I have never even thought of trying.

"Q. Do you have anything else you want to tell this court here that they should know that you can think of?

"A. It just would be that I'm not a queer. I'm just as normal as anybody else.

"Q. Now, you insist you're innocent, is that correct?

"A. Yes, sir."

The board of review read the accused's testimony as relating only to the "period of his adult life." It held the law officer erred in allowing trial counsel to cross-examine the accused about homosexual activity he engaged in between the ages of twelve and fourteen. In our opinion, the board of review placed too narrow a limitation on the Government's right to inquire into issues introduced into the case by the accused. In reaching this conclusion, we have put aside possible interpretation of the accused's testimony that he had not engaged in any homosexual act "since . . . [entering] the Air Force here" as an implied admission that he had previously engaged in such activity. Cf. United States v Conrad, 14 USCMA 344, 34 CMR 124.

An accused, like any other witness, is subject to cross-examination and to impeachment of his credibility. See Manual for Courts-Martial, United States, 1951, paragraph 149*b*; United States v Robertson, supra.

398

Under some circumstances, when a witness testifies to events occurring within a particular period of time, he may not be cross-examined on events that took place in a different period. In Salisbury Coca Cola Bottling Co. v Lowe, 176 Md 230, 4 A2d 440 (1939), the plaintiff sued for injuries allegedly produced by foreign matter in a bottle of cola manufactured by the defendant. The injury occurred in 1937. An officer of the defendant testified that in 1930 the company had installed new equipment, and followed new procedures, to remove foreign matter from bottles used by it. Over defense objection, the trial judge allowed plaintiff's counsel to cross-examine the witness on a claim made against the company for foreign matter in one of its bottles which had been presented before 1930. The Court of Appeals of Maryland held the trial ruling was erroneous. It pointed out that since entirely different machinery and procedures were in use between the two claims, the earlier one had "no necessary evidentiary connection" with the plaintiff's claim. *Id.*, at page 446. Similarly, in People v David, 12 Cal 2d 639, 86 P2d 811 (1939), the appellate court held the trial judge erred in allowing the prosecutor to cross-examine the accused's mother on a period of time different from that to which she testified. The *David* case, and other cases on the scope of cross-examination, indicate, however, that the cross-examiner is not limited to a mere review of the exact dates and times mentioned by the witness, especially where the adverse party is the witness.

When an accused's testimony covers a subject material to his defense, which may be affected by matters extending to a period of time before or after the period about which he testifies, the prosecutor can cross-examine him on these events to discredit the specifics of the direct testimony or to impeach the accused's credibility. Simon v United States, 123 F2d 80 (CA 4th Cir) (1941), cert den, 314 US 694, 86 L ed 555, 62 S Ct 412 (1941). So long as events in periods of time other than those mentioned in accused's examination have a rational tendency to rebut a subject opened to inquiry by the accused, he may properly be cross-examined on those matters. In United States v Rossi, 219 F2d 612 (CA 2d Cir) (1955), cert den, 349 US 938, 99 L ed 1266, 75 S Ct 782 (1955), the defendant was charged with narcotic offenses committed in the City of New York in 1953. On direct examination, he testified he was convicted and imprisoned in Italy in 1926 for a " 'conspiracy against the fascist regime' "; he later escaped and came to America. The United States attorney was allowed to cross-examine him about other offenses committed in Italy in 1919, when the accused was seventeen years of age, and in regard to a murder charge in 1925. On appeal, the Court of Appeals for the Second Circuit expressed uncertainty about the purpose the accused had in mind in referring to his conduct in Italy, but it assumed he believed the matter would be helpful to him. It sustained the trial judge's ruling on the scope of the accused's cross-examination on the ground it was "proper . . . [to inquire] into the whole subject of defendant's convictions of crime in Italy, in view of his opening up that subject on direct examination." United States v Rossi, supra, at page 616.

Here, the subject injected into the case by the accused's testimony was his purported sexual normalcy. The accused represented he was a "perfectly normal human being right now" and on January 1, 1963. This representation was in the nature of an opinion or conclusion as to his sexual conduct. We assume this opinion was admissible as an observation of the composite facts of his sexual behavior, which could not be adequately "conveyed to the court by a mere recitation" of the individual facts. Manual for Courts-Martial, supra, paragraph 138e; United States v Ayers, 14 USCMA 336, 34 CMR 116; Ewing v United States, 135 F2d 633, 642 and 643 (CA DC Cir) (1942), cert den, 318 US 776, 87 L ed 1145, 63 S Ct 829 (1943). The thrust of the representation was that normalcy of sexual conduct made it improbable that the accused committed the offense. The suggested inference was bolstered by

his further representations that according to his religion a homosexual act was a "sin" and that the extent of his faith was such that he considered such an act a sin.

The Government is entitled to cross-examine not merely on the actual facts testified to by an accused, but also on the reasonable inferences that can be drawn from these facts. People v Ernst, 121 Cal App 2d 287, 263 P2d 114 (1953); Weiss v United States, 122 F2d 675, 690 (CA 5th Cir) (1941), cert den, 314 US 687, 86 L ed 550, 62 S Ct 300 (1941). In the *Weiss* case, the accused was charged with using the mails to further a scheme to defraud the State of Louisiana. On direct examination, in addition to specific denials of guilt of the transactions charged, the accused attempted to portray himself as an outstanding architect of unusual ability and repute, implying thereby that a person of such attainments would not commit the acts charged. The prosecuting attorney was allowed to cross-examine him about a contract under which he undertook to build a house for another, in violation of the canons of ethics of the American Institute of Architects. The ruling was upheld on appeal.

If immediately before entering the Air Force the accused had engaged in substantial homosexual activity, that fact would materially undercut his testimony that he had not "even thought" of trying such activity after he entered the service, and that he considered such acts to be sinful. The greater the frequency of such acts before entering the service, the greater the likelihood the accused lied about one of the reasons he offered to support his denial of guilt. Trial counsel, therefore, could properly inquire into a period of time earlier than that mentioned by the accused in his direct examination. United States v Lowe, 234 F2d 919 (CA 3d Cir) (1956); see also United States v Coduto, 284 F2d 464, 467 (CA 7th Cir) (1960); Lindsey v United States, 133 F2d 368 (CA DC Cir) (1942). We hold trial counsel had the right to probe the truthfulness of the accused's assertion of sexual normalcy by inquiring into aberrant sexual acts committed by him before he entered the service. This conclusion does not, however, completely dispose of the third certified question.

Trial counsel cross-examined the accused about acts of sodomy with two youths. These acts began when the accused was about twelve years of age and ended when he was fourteen. Two problems are raised. First, does the social policy of protecting a minor from the harmful effects of youthful misconduct outweigh the necessity of impeaching his veracity? United States v Roark, 8 USCMA 279, 24 CMR 89; cf. United States v Bucur, 194 F2d 297 (CA 7th Cir) (1952). In the *Roark* case, we indicated that an accused is protected against general impeachment of his veracity by an act regarded as a juvenile indiscretion. However, in United States v Cary, 9 USCMA 348, 26 CMR 128, we held the shield of public policy which guards against disclosure of juvenile misdeeds cannot be used to pervert justice by protecting the accused against disclosure of his own testimonial untruths. See also United States v Butler, 13 USCMA 260, 265, 32 CMR 260. It is immaterial, therefore, that the accused's prior sexual acts took place during a time when he might properly be considered a juvenile delinquent, rather than a criminal offender. The second problem is whether the prior acts are so remote in point of time as to deprive them of probative value for the purpose for which they were offered. See Manual for Courts-Martial, supra, paragraph 149*b*; United States v Keleher, 14 USCMA 125, 33 CMR 337; United States v Warren, 6 USCMA 419, 20 CMR 135.

The accused was born on February 14, 1943. He was, therefore, eighteen years and nine months old when he entered the service in November 1961; and he was almost twenty years of age at the time of the offense. Thus, the acts of sodomy about which he was questioned were committed six to eight years before the offense charged.

In an out-of-court hearing, defense

counsel objected to the admission of the evidence because the previous acts were committed during the accused's "early stages of puberty" and were too remote to impeach the accused's assertion of present sexual normalcy, especially in light of medical testimony they were prepared to offer to show that an individual passes "through stages of development" and becomes "a different individual" after puberty. The law officer noted his awareness of the rule of remoteness, but overruled the objection.

Evidence of another act of misconduct, whether or not followed by conviction, may be inadmissible because the act is so remote in time or the underlying circumstances between the two acts are so changed, as reasonably to indicate that the previous act has too little probative value to satisfy the purpose for which it otherwise would be admissible. See Fire Ass'n of Philadelphia v Weathered, 62 F2d 78 (CA 5th Cir) (1932); Burt v United States, 139 F2d 73 (CA 5th Cir) (1943); Claunch v United States, 155 F2d 261 (CA 5th Cir) (1946). The matter is one for the sound discretion of the law officer. This discretion is subject to review for abuse. United States v Warren, supra, at page 429.

Necessarily, appellate review of the law officer's discretion is not by fixed formula, but according to the circumstances of the particular case. An interval of several months may be too long in one situation. Dunscombe v State, 19 Okla Crim 45, 197 Pac 1073 (1921). A two-year separation may be inconsequential in a different case. United States v Keleher, supra. Manifestly, the purpose for which the evidence of other misconduct is offered must be considered. The interval between the prior act and the act charged may be more limited when the evidence is offered for the purpose of proving previous plan or design, than it is when the act is offered to show the accused testified untruthfully in his direct examination on a material matter. Cf. United States v Warren, supra, with United States v Keleher, supra. Events

occurring since the prior act may reasonably indicate that the evidentiary value of that act is too slight to justify admitting it in evidence for the purpose for which it is offered. Salisbury Coca Cola Bottling Co. v Lowe, supra; Sinclair Refining Co. v Southern Coast Corp., 195 F2d 626 (CA 5th Cir) (1952).

In Goddard v United States, 131 F2d 220 (1942), the Court of Appeals for the Fifth Circuit upheld cross-examination of the accused about a twelve-year-old conviction for an offense committed when he was fifteen years of age. On the other hand, in the United States v Burt case, supra, at page 75, it held that nine-year-old "isolated convictions" for liquor law violations were "too ancient" to be used on cross-examination of the accused. In the United States v Rossi case, supra, the Second Circuit Court of Appeals sustained cross-examination of the accused about offenses committed by him when he was seventeen years of age; the earlier acts were perpetrated thirty-four years before the offenses for which the accused was tried. And in United States v Apuzzo, 245 F2d 416 (CA 2d Cir) (1957), the same Court of Appeals affirmed a trial ruling permitting cross-examination of an accused, on a subject opened by him in his direct examination, where the act about which he was examined occurred fifteen years before the offense charged.

We see no need to join appellate defense counsel in exploring the unsettled area of personality and character change to determine if overt homosexuality prior to puberty will or will not be completely replaced by normal heterosexuality. See Kinsey, Pomeroy and Martin, Sexual Behavior in the Human Male, chapter 5, pages 168–171, and chapter 21 (1948). Suffice it to note that the law officer conducted a preliminary hearing on the matter. The evidence submitted to him shows that the accused had apparent judgment and discretion in the period when he was twelve to fourteen years of age. It also shows the accused committed not one or a few isolated homosexual acts, but had regularly engaged in various types of homosexual activity over

401

a two-year period. In our opinion, this evidence of aberrant sexual behavior, although dating back six to eight years, was reasonably calculated to refute the accused's direct testimony that he was now sexually normal and that he regarded a homosexual act as a sin. On this record, we cannot say the law officer abused his discretion in permitting trial counsel to cross-examine the accused about his earlier sexual activity. We, therefore, answer the third certified question in the negative.

Much of what we said above applies to the fourth certified question. The .30 caliber shell incident occurred after the accused entered the service. It bore directly and materially on the normalcy of the accused's sexual behavior. The board of review, therefore, correctly sustained the law officer's ruling. We answer this question in the affirmative.

In view of our answers to the third and fourth certified questions, we reverse the decision of the board of review, and return the record of trial to The Judge Advocate General of the Air Force for resubmission to the board of review for further proceedings consistent with this opinion.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree that the first two certified questions need not be answered, for the question whether assault with intent to commit sodomy is lesser included in a consummated violation of Uniform Code of Military Justice, Article 125, 10 USC § 925, was not before the board of review. As the principal opinion notes, the convening authority saw fit to approve only so much of the findings of guilty as established the commission of a lewd and lascivious act by Airman Kindler. Whether the convening authority acted rightly or wrongly, that was the only offense presented to the board for its consideration, and its comments regarding assault with intent to commit sodomy are simply academic observations. Cf. United States v Morgan, 8 USCMA 341, 24 CMR 151; United

States v Maginley, 13 USCMA 445, 32 CMR 445. Thus, the inquiry presented is moot and need not receive our attention.

As hereinafter will be noted, I also agree that the trial counsel's examination of the accused concerning his recent, unusual act of self-abuse was proper cross-examination in light of the latter's assertions on direct examination. However, I respectfully note my dissent from the proposition that accused's testimony also permitted the prosecution's unparalleled excursion into the juvenile acts of sodomy which the law officer here allowed. I believe, as did the staff judge advocate and the board of review, that such constituted error. In view of their nature and the state of the proof, I also join with the board in its conclusion that such was prejudicial and requires a rehearing to be ordered.

The principal opinion correctly sets forth the accused's testimony as it bears upon the issue before us. In it, he first asserts that he is "normal," not a homosexual, and considers acts such as that charged against him to be sinful. In each instance, he spoke of the present and, indeed, emphasized that he was informing the court "the way . . . [he was] right now" or, as his counsel declared, "right now today." He went on to say that he was "not different" on January 1, the date of the alleged incident; was innocent; and had not engaged in any homosexual activities "or anything like this" since he had been in the Air Force. At no time did Kindler testify or attempt to state to the court members that he had not engaged in such acts or abnormal behavior prior to entry into the service or that he was not guilty of such conduct during his formative years. Rather, he carefully limited his testimony to his conduct after entering the service and, contrary to the implication of the principal opinion, sought not at all to create the impression that, not only was he now normal and incapable of the repulsive behavior depicted by the Government's case, but had always been so. His testimony, in short, was limited to his military career and, with some reasonable extensions, the scope

402

of the trial counsel's cross-examination should also have been so curtailed.

The cases cited by the majority simply do not support the result which it reaches. Thus, Simon v United States, 123 F2d 80 (CA 4th Cir) (1941), expressly notes that the alleged acts of misconduct brought forth on cross-examination of the defendant were only developed incidentally to the establishment of a fact material to the merits of the indictment and, further, that they bore directly on the accused's credibility, the court following the broad rule—which this Court has rejected—that acts of misconduct may be made the subject of inquisition in order to discredit a witness-accused. In brief, this case is simply contrary to our decision in United States v Robertson, 14 USCMA 328, 34 CMR 108, decided December 27, 1963, and it bears not at all upon the proposition whether the accused sought on direct examination to portray a false character to the fact finders and thereby authorized the trial counsel's inquiry.

Similarly, in United States v Rossi, 219 F2d 612 (CA2d Cir) (1955), the defendant on direct examination volunteered that he had been convicted of conspiracy against the Fascist regime in Italy and, in the words of Judge Medina, "vigorously asserted without qualification" that "he had never been convicted of any other crime." United States v Rossi, supra, at page 615. Thus, the circuit court's ruling upholding cross-examination concerning numerous other convictions was clearly proper. And it is also to be noted that the matter in question dealt with *convictions* as opposed to *acts* of misconduct. Again, however, the decision simply offers no authority for the proposition that a claim of normal behavior while in the military service allows cross-examination concerning acts of misconduct occurring six or seven years before.

The reference to Weiss v United States, 122 F2d 675 (CA 5th Cir) (1941), in which the defendant threw open the door to a wide ranging cross-examination concerning his adherence as an architect to ethical principles by his testimony on direct examination directed toward convincing "the jury that Weiss was strictly and ethically an architect of unusual ability," also fails to support the conclusion that this accused similarly invited inquiry concerning his juvenile acts. And, in the same manner, United States v Lowe, 234 F2d 919 (CA3d Cir) (1956); United States v Coduto, 284 F2d 464 (CA7th Cir) (1960); and Lindsey v United States, 133 F2d 368 (CA DC Cir) (1942), stand for no more than the general rule that a party is entitled to cross-examination fully consonant with the extent of the direct examination.

What then are the principles to be applied here? If, as I believe, the accused did not testify to lifelong normality but only to his behavior within the service and his present condition, then the real issues presented are whether the acts of misconduct involved were relevant to rebut his contentions, or to attack his credibility, or are barred from consideration by his youth at the time of their commission. In my opinion, evidence relating to them should have been excluded on all three bases.

First, in United States v Warren, 6 USCMA 419, 20 CMR 135, this Court, speaking through Judge Latimer, held inadmissible on the ground of remoteness acts of sexual misconduct which were some three and one-half years old. In so doing, it was pointed out that the staleness of the transaction simply obliterated any reason for drawing an inference of guilt and magnified the possibility of unfairness to the accused. *Warren,* supra, at page 428. Cited in support of this proposition were Simpkins v United States, 78 F2d 594 (CA 4th Cir) (1935) (acts of misconduct more than one year old irrelevant), and Hall v United States, 235 F 869 (CA 9th Cir) (1916). And how pertinent to the question here is the following quotation from *Hall,* supra, at pages 870–871:

". . . It is, however, never to be lost sight of that the defendant is entitled to be tried upon competent evidence and only for the offense charged, and where there is matter

**403**

collateral to the issue to be tried, it is the duty of the court to see that proof of collateral matter which can really only tend to prejudice the defendant with the jurors and to produce the impression that he is of low and depraved disposition is not admitted. . . .

. . . . .

". . . [I]t is not a logical inference to say that testimony of an assault upon a child nearly 3 years previously shows that defendant had a design or intent to make an assault nearly 3 years later upon another child. It is too plain, however, that proof of such collateral matter tends to produce the belief that defendant is a person of depraved moral character, and is highly prejudicial to the defendant on trial before a jury."

So also is it illogical to infer from acts of sodomy committed between accused and his twin brother at the ages of twelve, thirteen, and fourteen, that he was not normal after the beginning of his military service in November 1961, at which time he was seventeen and on the date of the alleged offense, when he was nineteen. The simple result is to paint the accused to the court-martial as a pervert of the type likely to commit the crime charged and thus improperly to impugn his denial of guilt. Hall v United States, supra; Bird v United States, 180 US 356, 45 L ed 570, 21 S Ct 403 (1901). Hence, upon this ground alone, I would hold the evidence of accused's acts should not have been received.

Secondly, it is now clear beyond cavil that an accused may not be cross-examined as to his credibility on the subject of prior acts—as opposed to convictions—of misconduct. United States v Robertson, supra; United States v Miller, 14 USCMA 412, 34 CMR 192. As we noted in those cases, the danger that the fact finders will convict the accused on the basis that his prior behavior justifies such action far outweighs the considerations in favor of receiving such evidence on behalf of the Government. These decisions also call for reversal here.

404

Thirdly and finally, even though it be concluded that these acts of misconduct are relevant and admissible despite the lapse of time since their occurrence and the fact that no convictions were involved, I yet believe they should have been excluded as having occurred while the accused was admittedly a juvenile.

In United States v Roark, 8 USCMA 279, 24 CMR 89, this Court expressly considered the reception of "accused's previous acts of misconduct during his infancy." Roark, supra, at page 281. In concluding that juvenile acts of misconduct—as well as juvenile adjudications of delinquency—were not admissible for impeachment purposes, we said, at page 284:

"We recognize the contention that . . . military law accepts . . . [acts of misconduct] as affecting credibility. We do not believe it necessary to carry that concept as far as juvenile delinquency is concerned. . . ."

And we went on to say, at page 285:

"In the case at bar, the accused was fourteen and a half years old at the time of his juvenile delinquency, and he was over the age of eighteen when he committed these offenses. It may well be that there was no significant change in his habits, attitudes, or character during the three and a half years intervening between the misdeeds, but the immaturity of a fourteen and one-half-year-old boy argues against using his early predilections in a criminal proceeding after he reaches an age when society must charge him with the judgment, sense, and discretion of one who has reached his majority. If minors who have offended against the laws of society afterward outgrow their divergency, it may in some small measure be chargeable to the chance of starting anew which the juvenile delinquency laws espouse. Some of these boys will one day enter the military service, and a sound social policy recognized in many States should not be completely discarded when and if the boy, now a man in the eyes of the

military, becomes an accused in a trial by court-martial. Remoteness and policy can both be touchstones of inadmissibility without serious injury to the system. The handicap to the Government in prosecutions in military courts is no greater than that placed upon district attorneys in many of our States, in the District of Columbia, and seemingly in Federal district courts. Once it is concluded the rule of inadmissibility is sound, we would not abide in the spirit which prompted such legislation if we permitted the same information to be brought out by cross-examination."

See, to the same effect, United States v Cary, 9 USCMA 348, 26 CMR 128, and United States v Butler, 13 USCMA 260, 32 CMR 260.

We have, therefore, steadily adhered to the principle that juvenile misbehavior is not usable for impeachment purposes on cross-examination of the accused. The sins of the child are not to be visited upon the adult unless, of course, he seeks to mislead the fact finders into believing that he, *as a juvenile,* was pure as the driven snow. Cf. Walder v United States, 347 US 62, 98 L ed 503, 74 S Ct 354 (1954). But, as noted above, that was not the case here, for the accused sought only to characterize his military service as normal and his present state as not being that of a homosexual. Under such circumstances, I would apply the general principle which we have heretofore laid down and hold the law officer's ruling permitting the cross-examination here involved was prejudicially erroneous because it required disclosure of juvenile misconduct.

For all of these reasons, therefore, I would answer the third certified question in the affirmative.

As to the fourth question, as noted above, I am convinced that the accused, by his claim of sexual normality during his service, opened himself to the cross-examination by which the cartridge incident was divulged. Indeed, this episode points up the basic distinction which I—unlike my brothers—find present in this case, *i.e.,* the extent to which accused's direct testimony, unfortunately for him, embraced the acts of self-abuse concerning which he was questioned by the prosecution. As to this question, therefore, I agree that there was no error on the part of the Government or the law officer.

In sum, then, I am of the view that Kindler's limited testimony of normality during his military career did not serve to authorize the trial counsel to cross-examine him about acts of sodomy which occurred while he was a juvenile and approximately five years prior to his enlistment in the Air Force. The door being ajar, rather than open, it was prejudicially improper to parade such acts of misconduct before the court-martial. United States v Roark; United States v Warren; United States v Robertson, all supra. I would, therefore, answer the certified questions as indicated and order a rehearing.