UNITED STATES

v.

Staff Sergeant Rollin D. HALL, 230–58–2694, U. S. Army, Company D, 3d Battalion, 3d Basic Combat Training Brigade, U. S. Army Training Center, Fort Dix, New Jersey.

CM 434037.

U. S. Army Court of Military Review.

Sentence Adjudged 11 Aug. 1975.

Decided 14 July 1976.

Appellate Counsel for the Accused: CPT Peter V. Train, JAGC; CPT John R. Osgood, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DONAHUE, Judge:

The appellant was convicted of an unauthorized absence, disrespect to an officer, being drunk and disorderly, and communicating a threat in violation of Articles 86, 89 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 889, and 934, respectively. He was acquitted of charges of two other unauthorized absences and one other of wrongful communication of a threat. The approved sentence is set forth above.

Assessment of the errors assigned requires an outline of the evidence.

DA Forms 4187 and testimony of witnesses set forth the government's evidence of the unauthorized absence. The appellant testified that, initially, he thought he was on leave during the period in question because he had telephoned the Charge of Quarters and directed him to tell the company commander, Captain Delk, to put him on leave. Later, Captain Delk told him on the telephone that he was absent without leave. However, the appellant maintained that Delk told him he would change his status if he provided proof that his wife had been in an automobile accident. Subsequently, proof was provided that Mrs. Hall had been in a minor accident (no personal injuries, $30.00 property damage). Mrs. Hall also testified that Delk promised to change appellant's unauthorized leave status. Delk denied this.

The other offenses that resulted in convictions took place at about 1915 hours, 14 May 1975. The prosecution presented testimony by Captains Delk and Lantzky that the appellant approached Delk, was disrespectful, drunk and disorderly, and communicated a threat to kill Delk. The appellant testified that he was drunk at the time, remembered approaching Delk, and remembered nothing else. He also testified that he was positive he would not commit the acts charged. In addition, the appellant presented several witnesses who testified to his soldierly qualities and outstanding military record. The government presented rebuttal witnesses who partially contradicted the existence of these qualities.

The greatest part of the nearly 800 pages of the record of trial contained evidence by the appellant that was intended to show that his performance of duty deteriorated due to the combination of a personality conflict with Captain Delk and marital problems with his wife. Because of the bizarre nature of· some of this testimony, the government presented testimony by a psychiatrist to establish the appellant's sanity.

The first error assigned by the appellant is that the military judge erred to the substantial prejudice of the appellant in admitting, over defense objection, evidence of the appellant's prior misconduct.

At trial during the direct examination of Sergeant First Class Winters, a defense witness, testimony was elicited that the witness, who had served with the appellant at Fort Riley, had never observed the appellant being disrespectful to a superior officer or non-commissioned officer and that he had never heard of appellant offering to fight anyone. Another defense witness, Staff Sergeant Darby, gave the same testimony. During cross-examination of the appellant the trial counsel asked, over defense objection, whether he had received a court-martial in Korea and whether he had been involved in a fight while in Korea. The appellant denied receiving a court-martial or being in a fight but stated that his first sergeant had hit him as the result of a misunderstanding.

In rebuttal to the testimony set forth above, the prosecution called as a witness Captain Simonsen who had been the appellant's executive officer at Fort Riley, Kansas.* He was asked if he were aware of an incident in which the appellant may have been tried by court-martial. In response, he testified that he had seen the contents of a manilla envelope that came to the Fort Riley unit from the appellant's former unit in Korea which contained a conviction reducing him one grade and imposing a fine for assaulting a superior non-commissioned officer. On cross-examination Captain Simonsen equivocated as to whether what he had seen was a court-martial conviction. The trial counsel admitted to the court that there was no such Article 15 or court-martial in the appellant's file. Appellate government counsel concedes that even if such a conviction existed it did not constitute an offense involving moral turpitude so as to permit admission simply to impeach the appellant. We are convinced that no such conviction ever existed.

■ The government maintains that the evidence in question was admissible under

* The offenses under consideration took place at Fort Dix, New Jersey.

the provisions of paragraph 153*b*(2)(b), Manual for Courts-Martial, United States, 1969 (Revised edition) to contradict defense evidence that the appellant had never committed certain kinds of offenses. *See United States v. Kindler*, 14 U.S.C.M.A. 394, 34 C.M.R. 174 (1964). We do not decide that contention because here the evidence introduced by the government is too unreliable for consideration. Introduction of the vague, uncertain, hearsay testimony of Captain Simonsen was error. If the appellant suffered specific prejudice from this error, reversal must follow. *United States v. Rainbolt*, 43 C.M.R. 592 (A.C.M.R.1970). However, reversal is not automatic. Overwhelming evidence of guilt can preclude any fair risk of prejudice, *United States v. Johnson*, 1 M.J. 152 (1975); *United States v. Satey*, 16 U.S.C.M.A. 100, 36 C.M.R. 256 (1966).

■ Our evaluation of the evidence in the case *sub judice* convinces us that the government's evidence of the appellant's guilt was so overwhelming that there was no risk that the appellant was prejudiced by the erroneous admission of evidence of appellant's alleged misconduct in Korea.

■ The appellant also assigns error as a consequence of a gap in the record of trial caused by a malfunctioning of the recording equipment during the cross-examination of a prosecution witness, Private Parkhurst. This witness had been with the appellant about 3 hours prior to the incident at 1915 hours, 14 May 1975 that led to the charges of disrespect, drunk and disorderly conduct, and wrongfully communicating a threat.

Parkhurst testified during direct examination that the appellant had been drinking and that at 1615 hours the appellant communicated a threat to him. Although the appellant was acquitted of the 1615 threat charge, he claims that the unrecorded portions of the cross-examination might have covered aspects of the 1915 incident that did result in convictions. Parkhurst was not present at 1915. The completely recorded direct examination gives dependable indication of the possible scope of cross-examination. Any weight that could be ac-

corded to Parkhurst's testimony as to the appellant's drunkenness several hours earlier is overshadowed by the appellant's judicial confession that he was, indeed, drunk and by the extended, uncontested, testimony of eyewitnesses to the actual events.

We hold that the appellant suffered no prejudice from the partial omission of Parkhurst's testimony on cross-examination. *United States v. Thompson*, 22 U.S.C.M.A. 448, 47 C.M.R. 489 (1973).

We have considered the appellant's other assignment of error and find it to be non-meritorious. The sentence is appropriate for the offenses.

The findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge COSTELLO concur.