UNITED STATES

v.

Airman Ricardo H. BARTLETT, FR 563–33–8278 United States Air Force.

ACM S25278.

U. S. Air Force Court of Military Review.

Sentence Adjudged 25 March 1981.

Decided 14 Dec. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel Bruce R. Houston.

Before POWELL, KASTL, and MAHONEY, Appellate Military Judges.

## DECISION

PER CURIAM:

The accused raises an issue concerning the proper interpretation of Mil.R.Evid. 608(b) as to cross-examination of an accused regarding specific instances of misconduct.

The accused was charged with theft and forgery. Prior to its case-in-chief, the prosecution sought the military judge's ruling on the admissibility of two records of nonjudicial punishment for larceny; the prosecution wished to use the documents in cross-examining the accused, should he take the stand. The military judge ruled that he would not admit the two documents, but that he would allow the prosecution to cross-examine the accused on the two alleged larcenies upon which the nonjudicial punishments were based. The accused elected not to testify on the merits; trial defense counsel emphasized to the judge that "but for your ruling, the accused would have taken the stand and denied his complicity."

The Court of Military Appeals recently held it would have been prejudicial error to admit an accused's counselless summary court-martial conviction for impeachment purposes. *United States v. Cofield,* 11 M.J. 422 (C.M.A.1981). Seeking to apply *Cofield,* the accused here argues the ruling of the military judge was erroneous.

■ We find *Cofield* inapposite. The military judge indicated he would not admit the underlying documents, but he stated that he would permit cross-examination on the two earlier larcenies which formed the basis for the Article 15 punishments. In this trial for larceny and forgery, those earlier specific larcenies would have been probative as to untruthfulness, if the accused testified. *United States v. Berthiaume*, 5 U.S.C.M.A. 669, 18 C.M.R. 293, 302–303 (1955). We do not read Mil.R.Evid. 608(b) as shielding an accused who testifies from the issue of credibility, which he himself has put in dispute. *Brown v. United States*, 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958); *United States v. Kindler*, 14 U.S.C.M.A. 394, 34 C.M.R. 174, 177, 179 (1964). *See, United States v. Wilson*, 12 M.J. 652 (A.C.M.R.1981). Accordingly, we find the military judge's ruling was within his discretion. *See*, Analysis, Appendix 18, A18–88, Manual for Courts-Martial, 1969 (Rev.).

■ The accused also claims that the court-martial was without jurisdiction to try him. At trial, Captain D defended the accused, rather than Captain F, the originally detailed counsel, who was excused by the accused. The accused now contends that, because Captain D was really "detailed" rather than "requested," the failure to prepare a written amending order so stating was a jurisdictional defect.

We disagree. The record of trial indicates some confusion as to whether Captain D was actually appointed or was requested by the accused. We find that Captain D was, in fact, the individually requested counsel, and that he performed ably. Yet, even if he were detailed counsel, we would find no prejudice to the accused's rights. The convening authority's affidavit makes it clear that Captain D participated in the trial with the convening authority's knowl-edge and consent, and by virtue of his oral appointment. Furthermore, the military judge gave the accused the benefit of any doubt by advising him that he could have another counsel, if he wished, along with Captain D. Testing for prejudice, we perceive no possibility of harm to the accused. *See, Wright v. United States*, 2 M.J. 9 (C.M.A.1976).

We have considered the other matters raised by the accused at trial and on review, and resolve them adversely to him. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

MAHONEY, Judge (concurring in result):

I concur in the result, but disassociate myself from the rationale because of what I perceive to be a departure by the Court of Military Appeals from well-established and well-reasoned trial procedures which will divert courts-martial from their truth-seeking role and encourage gamesmanship.

I have difficulty understanding *United States v. Cofield*, 11 M.J. 422 (C.M.A.1981), which appellate defense counsel claim is dispositive and which the majority finds inapposite. Without specifically overruling clear precedent to the contrary, *Cofield* appears to signal that an accused may preserve for appeal an advisory ruling by a trial judge willing to rule on a hypothetical set of facts presented by counsel. If this is indeed part of the holding of *Cofield*, we could face a veritable Pandora's box.[1] One can envision the diligent defense counsel seeking a virtual dry-run of the trial to determine what lurks behind each evidentiary door, and around every procedural corner. Of course, what's fair for the accused is fair for the government. Thus the prudent prosecutor would no doubt wish to determine which evidentiary cards to play

---

1. In *United States v. Cofield*, 11 M.J. 422 (C.M.A.1981), the Court of Military Appeals did not mention *United States v. Harris*, 10 U.S.C.M.A. 69, 27 C.M.R. 143 (1958), which holds that the accused may not save for appeal a ruling by the military judge on a hypothetical set of facts. That such a ruling influenced the tactics of the accused, and caused him to forego placing his character in issue provides no legitimate basis for complaint. *United States v. Toledo*, (unpublished) ACM 22835 (A.F.C.M.R. 4 May 1981). Thus, I am uncertain whether *Cofield*, which was tried prior to adoption of the new Military Rules of Evidence, establishes a new rule of appellate practice contrary to *Harris*.

and which to discard. In the end, a well-polished, minimum-risk script could be reenacted for the court members.[2]

It appears to me that such a procedure subverts the very purpose of the trial as a truth-seeking, fact-finding and adjudicatory engine. I do not believe that the rules of evidence require that the court be provided a sanitized version of reality. Within the parameters of the rules of evidence the fact-finders should be permitted to weigh all the relevant, material, and probative evidence the parties have to offer.

Turning to the facts in this case, I reject any consideration of the trial defense counsel's statement to the military judge that "but for your ruling the accused would have taken the stand and denied his complicity." The counsel's statement itself was not evidence. Further, since the military judge's ruling did not preclude the accused from testifying, the statement of counsel did not qualify as an "offer of proof" or otherwise attain evidentiary status for appellate consideration. Mil.R.Evid. 103(a)(2). *See, United States v. Barbeau*, 9 M.J. 569 (A.F. C.M.R.1980).

The accused's failure to take the stand in his own defense was his own tactical trial decision. A.B.A. Standards, The Defense Function, § 5.2(a)(iii). Conceding that the trial judge's preliminary ruling (that prior misconduct could be broached in cross-examination) may have influenced the accused's decision, the accused is entitled to no relief at this point, even if the preliminary ruling was wrong. The fact is that the accused was never questioned about those prior larcenies during the findings portion of the trial. Perforce, he was not harmed by the ruling. Mil.R.Evid. 103(a).[3] Moreover, assuming such a ruling to be error, the military judge might well have reconsidered it prior to cross-examination in the event the accused did testify. Finally, *if* the accused had testified, and *if* the judge did permit the cross-examination, and *if* the ruling was error, and *if* the accused acknowledged such misconduct, the accused would be entitled to suitable relief, extending to a rehearing, if appropriate, to correct prejudicial error.[4]

It ought to be borne in mind that even if the trial judge persisted in his preliminary determination, and even if that determination was in error, the accused was not precluded from denying his guilt, but merely from doing so without having his credibility impeached by any prior acts of misconduct which he admitted on cross-examination. In the event he admitted such acts, he would be entitled to a limiting instruction, to the effect that such prior larcenies could only be considered for the purpose of determining the credibility of his testimony. On the other hand, if the accused denied such

2. This is not the only procedural innovation suggested by the *Cofield* decision. That the accused may be entitled to more than one hearing on the issue of guilt or innocence is inferred from the authority of the factfinder(s) to reconsider findings of guilty at any time until the sentence is announced. *United States v. Cofield, supra*, at 426, note 3. By analogy, the accused would also be entitled to a second hearing on the sentence, at any time prior to the authenticated record being forwarded to the convening authority. Manual for Courts-Martial, 1969 (Rev.), paragraph 76c. I reject both inferences. The fact that military law allows the court, as a deliberative body, reasonable latitude in reconsidering findings of guilty or the sentence after due reflection is a far cry from entitling the accused to more than one evidentiary hearing on those matters. *United States v. Stivers*, 12 U.S.C.M.A. 315, 30 C.M.R. 315 (1961); *United States v. Ford*, 12 U.S.C.M.A. 31, 30 C.M.R. 31 (1960); *United States v. Tobita*, 3 U.S.C.M.A. 267, 12 C.M.R. 23 (1953).

3. Mil.R.Evid. 103(a), as proposed by the drafting committee, and adopted by the President, does not stray from the literal language of the federal model, to the effect that prejudicial error may be predicated only upon rulings which *admit* or *exclude* evidence. From this circumstance I infer that both the drafters and the President intended its literal application, notwithstanding some federal circuit court holdings that error could also be predicated on hypothetical rulings. *See, United States v. Cofield, supra*, at 427–430. Significantly, the Supreme Court has yet to rule on the issue. *See, Cofield, supra*, at 433 (Cook, J., dissenting).

4. In effect, the defense position, if adopted, would allow the accused to unilaterally create a presumption of prejudice, based upon averments of counsel, in lieu of a record of actual testimony, taken in context of the entire trial.

prior larcenies, the prosecution would not be permitted to prove them by extrinsic evidence, and the court should be instructed to disregard the question. Mil.R.Evid. § 608(b).[5]

In conclusion, I believe that, except in truly extraordinary circumstances, it is a waste of trial time to entertain any hypothetical motions or objections. Trial judges are not required to rule upon such motions or objections unless and until they ripen into genuine issues at trial. *See, United States v. Johnston,* 543 F.2d 55, 59 (8th Cir. 1976). Needless to say, counsel should not engage in trial by ambush, and in any trial before court members, the admissibility of damaging and potentially objectionable matter should be litigated in an out-of-court hearing after the issue has ripened. Mil.R.Evid. 103(c).[6]

**5.** The questioning attorney must have a good faith basis for asking such a question. *See, e.g.* A.B.A. Standards, The Defense Function, § 7.6(d); The Prosecution Function, § 5.7(d). If the accused denied the misconduct, the question could not be considered against him, and a limiting instruction to that effect would be appropriate.

**6.** Ideally, a contested case could be conducted without the need to occasionally excuse the court members for the purpose of ruling on motions or objections. However, practical considerations, including those alluded to in the text, frequently outweigh the desirability of attempting to resolve all possible issues before empaneling the court members. The decision to hear legal issues when they arise, and out of the hearing of court members, should not be encumbered by concern for the convenience of the members. Once the members are serving at a court-martial, their primary—indeed their sole—duty is to serve justice. In my experience as a trial judge I found that with a minimum of courtesy and explanation, court members accept with remarkable patience the delays inherent in the process of doing justice.