UNITED STATES, Appellee

v

JERRY W. DUNCAN, Private First Class,
U. S. Army, Appellant

9 USCMA 465, 26 CMR 245

No. 11,195

Decided July 18, 1958

*Captain Arnold I. Melnick* argued the cause for Appellant, Accused. With him on the brief was *Colonel Edward M. O'Connell.*

*First Lieutenant Thomas M. Lofton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to the offenses of driving a vehicle in a wanton manner, disrespect toward, disobedience of, and two assaults upon, superior officers, in violation of Articles 111, 89, and 90 of the Uniform Code of Military Justice, 10 USC §§ 911, 889, and 890, respectively. Prior to the time of trial, he solicited the convening authority to extend leniency in the event he pleaded guilty. He received assurance that, in the event he concluded to confess guilt, the reviewing officer would not approve a sentence greater than dishonorable discharge, total forfeiture of pay and allowances, and confinement at hard labor for two years. After the plea and presentation of evidence in extenuation and mitigation, the court-martial returned a sentence of dishonorable discharge, total forfeitures, and confinement at hard labor for ten years. On review by the convening authority, the period of incarceration was reduced to two years, in keeping with the pretrial agreement. We granted accused's petition to determine whether the law officer erred by limiting the questions of a court-martial member.

For the information of the court-martial, prior to findings the trial counsel offered into evidence two stipulations of fact entered into between the prosecution and defense. These stipulations covered generally the facts surrounding the various offenses. The court was thereupon instructed and directed to deliberate upon a verdict when a court member delayed their retirement for this purpose by announcing he desired to ask some questions. He was informed by the law officer that the court should proceed to vote on the findings, but he nevertheless insisted upon asking certain questions. His first inquiry was directed to the subject of whether the participants were in uniform, but the information was not furnished, for the law officer stated the question was immaterial in view of the plea of guilty. The law officer, however, went on to explain that the evi-

dence could be elicited after findings. The court member apparently was satisfied, for he announced he would inquire later.

After findings, defense counsel took the initiative in presenting evidence in extenuation and mitigation. Included in their showing were statements from the two officers who had been assaulted and disobeyed. These statements disclosed that accused had confessed his error and made formal apology to the victims. The tenor of the letters was favorable, and both officers requested that the accused be given a chance to rehabilitate himself. After completion of defense testimony, trial counsel called a military police sergeant, apparently for the purpose of satisfying the court member's curiosity about uniforms. He had proceeded far enough to show the apparel of the participants when the defense counsel objected on the grounds that the accused had admitted the offenses and the testimony was irrelevant. Trial counsel then announced he had no further questions, but the court member was not satisfied. He thereupon asked the sergeant whether, in his opinion, accused was drunk. The sergeant replied in the affirmative, but the law officer ordered the evidence stricken on the grounds that a proper foundation had not been shown. Neither defense counsel nor trial counsel objected to the ruling, but the court member was not satisfied, for he sought to argue with the law officer. After a short dialogue, the member was informed that the matter had been ruled upon and the ruling was final. The member exhibited his irritation with the law officer by stating, "Well, that's great."

Before proceeding with our discussion on the merits of the appeal, we believe it apropos to make a short comment about the conduct of the court member. It is long past the time when members of courts-martial should seek to use their official position or rank to argue with and belittle the rulings of law officers. They must accept the fact

**467**

that the law officer is the judge of a military court and he rules on questions of law and other interlocutory questions. Members of courts are not monitors of his rulings. Their duty is to determine the guilt or innocence of the accused, and they should not depart from that role. If factual situations are underdeveloped or unclear, they are entitled to ask clarifying questions. However, there are proper means by which this may be done and, except in those instances where the Code gives the court the right to overturn a law officer's rulings, court members must accept rulings of law from the "judge" and not become piqued at his decisions. Caustic comments neither add to the dignity of the court members nor the atmosphere of the courtroom drama. In this instance, the record indicates that the member stepped out of character, but fortunately the law officer exercised his judicial powers well.

While we believe the rulings of the law officer could, if necessary, be justified in all instances, we need not concern ourselves with the propriety of his rulings because there was no prejudice to the accused. We do not question the right of a court-martial to be furnished with the facts and circumstances surrounding the commission of the offenses, even though a plea of guilty has been entered. Certainly, if a court member believes a plea to be improvident, the facts touching on that would be relevant, but the tenor of the questions asked by this court member indicates that he was not seeking to explore that issue. Furthermore, a member can inquire about matters relevant to guilt or innocence, but his questions are subject to the rules of competency, materiality, and relevancy. The question asked prior to findings was entirely immaterial, for the accused had pleaded guilty to assaulting two of his superior officers and, by his own admissions, had admitted he knew they were captains. Knowing their rank, their apparel would be of no importance, but parenthetically we note that, when the evidence was produced, it disclosed they were dressed in officers' uniforms bearing the insig-

**468**

nia of captains. That evidence did not aid the accused, so the first ruling, if incorrect, could not have been prejudicial.

The answer to the second question, as we have indicated, concerned the intoxicated condition of the accused. Apparently both trial and defense counsel were satisfied with the ruling striking the answer because neither raised any objection to the order. Defense counsel had established that the accused was intoxicated, but the law officer was very careful to make certain that the defense was not seeking to raise drunkenness as a defense to the merits. The stipulation of facts conceded that accused had been drinking, but they are significantly silent as to whether he was intoxicated to such a degree that he was unable to drive an automobile or identify an officer. Prior to the time the answer was stricken, defense counsel, in summing up his showing on extenuating facts, stated that the accused was intoxicated to some degree, but he avoided the extent of incapacitation. Apparently the entire thrust of the defense was to concede guilt and minimize punishment by making the strongest possible showing that, while the accused was legally accountable for his criminal conduct, he was influenced by his prior consumption of alcohol. Certainly, defense counsel did not want to open up the issue of guilt or innocence, and they affirmatively opposed the production of any Government evidence other than that introduced by stipulations. Such being the state of the record, the answer added nothing of merit and the order striking the evidence was innocuous.

We are not here concerned with questionable representation, for the record of trial shows beyond question that trial defense counsel represented their client in a commendable manner. He was charged with offenses which carried a maximum penalty of twenty-six years and, with the facts overwhelmingly against them, their whole strategy was to lessen the punishment. By stipulation to facts and by introducing the best available evidence in extenuation and mitigation, defense counsel placed

the complete tragedy before the court-martial in a way most favorable to the accused. All facets were fully and fairly developed and if the testimony which was ordered stricken had remained before the court-martial for consideration, the members would not have been better informed. Therefore, assuming arguendo the law officer erred or assigned the wrong reason for his ruling, the accused was not prejudiced.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent upon the ground of the law officer's curtailment of questioning of witnesses by the court-martial ▮▮▮▮▮ tial member. The court and its members may ask a witness any questions that either side might properly ask the witness. United States v Blankenship, 7 USCMA 328, 22 CMR 118. Manual for Courts-Martial, United States, 1951, paragraph 149b(3). As Judge Latimer said in his concurring opinion in *Blankenship*, supra:

"... the law officer can determine the nature of the testimony desired. He must rule on the competency, materiality, and relevancy of the desired information, and he can do that in advance, if necessary."

In the present case the law officer did not even take the trouble to ascertain what other questions the inquisitive court-martial member had in mind nor the area of evidence which he wished to explore. Consequently, I would reverse the decision of the board of review.