UNITED STATES, Appellee

v

STANLEY L. BUTLER, Private, U. S. Army, Appellant

13 USCMA 260, 32 CMR 260

No. 15,909

August 3, 1962

*First Lieutenant Bruce C. Johnson* argued the cause for Appellant, Accused. With him on the brief was *Captain Richard A. Baenen.*

*Captain Alvin B. Fox* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Accused was brought to trial before a general court-martial convened at Fort Leonard Wood, Missouri, on charges alleging two counts of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922. He pleaded not guilty.

The evidence indicated that on the night in question accused and his two companions had given their two victims a ride. On a subterfuge they drove down a lonely back road, where the vehicle was stopped. The record does not show that accused personally threatened the victims. It is admitted, however, that threats against their physical well-being had been made, and at that dark and isolated place the victims were, in turn, separately and forcibly pulled from the car and held by one of the parties to these crimes, while accused relieved them of their money. Both in his pretrial statement and his testimony as a witness in his own behalf at trial, accused admitted taking the money from each victim, but attempted to assert that he had acted under a rather vague sort of duress by his "strong arm" associate who held the victims. Accused conceded, however, although he claimed to be afraid, that he had never been in a fight with this man, and knew the latter was not at the time armed with any sort of weapon. Further, accused admitted he had not been threatened nor menaced during the course of the offenses and that, had he chosen, he could have run away rather than participating in the crimes. See United States v Turner, 7 USCMA 38, 21 CMR 164; United States v Valenzuela, 7 USCMA 45, 21 CMR 171. Accused kept a share of the proceeds taken from the victims, and distributed the remainder to his companions in the unlawful venture.

The court-martial acquitted accused of the principal offenses charged but, consistent with his virtual judicial confession and, under the law officer's proper instructions on duress, the court found accused guilty of the lesser included offenses of larceny, contrary to Article 121 of the Code, 10 USC § 921. He was sentenced to bad-conduct discharge, partial forfeitures and confinement at hard labor for twelve months, and reduction to the lowest enlisted grade. The convening authority suspended execution of the punitive discharge with provision for automatic remission, but otherwise approved the findings and sentence, and the board of review affirmed. Thereafter, we granted accused's petition for review in order to consider arguments on the following issue:

Whether accused was prejudiced on sentence by the questions and comments of the court-martial president

**261**

regarding a purported prior conviction.

The comments forming the basis of the granted issue occurred immediately before the court-martial retired to deliberate on sentence, after the law officer's instructions thereon. When the latter inquired whether further explanation was desired, the following colloquy ensued:

"PRESIDENT: I would like—I don't know if this is the proper place to do this, but I would like to request that my comments regarding this document that was about to be introduced in evidence in the court and later denied be made a matter of record, because I feel that has some bearing on the accused in regard to his credibility and the witness on the stand.

"LAW OFFICER: I have instructed the court to disregard it, and to disregard all the evidence pertaining to it, and I feel—

"PRESIDENT: I would like my statement that I don't agree with that be made a matter of record.

"DEFENSE: The defense would like to call Stanley L Butler to the stand, if possible.

"LAW OFFICER: Well, Colonel—

"PRESIDENT: That is all I want, I just want my statement in the record of the court.

"LAW OFFICER: Colonel, this is late, but I suppose even at this late date I will have to question the court.

"The court has taken an oath whereby the court members agreed to abide by the rulings and instructions of the law officer. The law officer alone provides the court with the rules of law, and he must pass on objections and so forth.

"Now, if you feel that you have not been able to follow the instructions given in regard to this document—

"PRESIDENT: No, I am not trying to bring the document back. I want my statement, that I feel that is not proper, I think it had something to do with it, just my statement.

"LAW OFFICER: May I ask you this, sir,—

"PRESIDENT: That is all I want.

"LAW OFFICER: Just so it will be clear in my mind and for the record, in spite of the fact that you have this feeling, you feel that you could abide by my instructions concerning it, is that correct?

"PRESIDENT: Yes.

"LAW OFFICER: No question about that having affected you in your findings in the case?

"PRESIDENT: Even though that is true, I still have the right to have that statement read into the record of the court.

"LAW OFFICER: That will be in the record.

"PRESIDENT: That is all I want.

"LAW OFFICER: What I am trying to get at, I want to make sure that I understand, in spite of the feeling you have, you have abided by my instructions in regard to the statement?

"PRESIDENT: True.

"LAW OFFICER: Very well, thank you, sir.

"I might add that we are all human and make errors.

"PRESIDENT: I realize that.

"LAW OFFICER: My ruling on this, of course, will be reviewed by the appellate authorities.

"PRESIDENT: I am not contradicting your ruling, I just think I have a right to have that read into the record.

"LAW OFFICER: It is perfectly proper, sir. I just want to make sure that we understand each other.

"PRESIDENT: I am not contradicting your ruling, I realize I can't do that.

"LAW OFFICER: Very well, sir.

"Does either side, in view of this conversation, desire any further instructions be given the court prior to its closing to vote on sentence?

"PROSECUTION: Nothing further by the government, sir.

"DEFENSE: Nothing by the defense, sir.

"LAW OFFICER: Does any member of the court desire further instructions or any instructions I have given repeated?

"PRESIDENT: Apparently not.

"LAW OFFICER: Very well, the court may be closed."

In order to understand the import of this exchange between the president and the law officer, it is necessary to explain in some detail what had transpired previously. In testifying for himself on the merits, accused stated he had never been convicted in a civilian court, and had never before received a court-martial nor been subjected to nonjudicial punishment in the military. He concluded his testimony on direct examination with the statement he had never "been in trouble on the outside at all." He did not want to be discharged; he desired to stay in the Army and finish his career, and would "be all right" if permitted to remain in the service.

On cross-examination trial counsel asked accused whether he was arrested on January 3, 1961, for receiving stolen goods. The defense immediately interposed an objection and the law officer thereupon held a closed conference. From the record, plus the quoted comments by the court-martial president, and the discussion of this matter by the staff judge advocate in his post-trial review, it is apparent that in asking the question trial counsel had referred to a document concerning accused's civilian background.

The parties here dispute the nature thereof. The defense asserts the entry showed an arrest only. Further, we note that in a post-trial certificate submitted in explanation of remarks by the staff judge advocate in his review, accused claimed the arrest was a mistake and he was released by the authorities when they learned he had no knowledge the property was stolen. On the other hand, the Government argues that at trial the law officer and the parties con-

sidered that the document reflected a juvenile conviction. And the clemency section of the post-trial review for the convening authority indicates accused's arrest for receiving stolen property resulted in his adjudication as a juvenile delinquent given probation. However, in view of the conclusion we reach, we need not attempt to resolve that dispute.

In the out-of-court session defense counsel argued that juvenile offenses were not admissible at all, and that only convictions could be admitted as to character. After inviting trial counsel's attention to United States v Roark, 8 USCMA 279, 24 CMR 89, the law officer inquired whether his position was altered. Trial counsel replied that in light of that legal authority and defense counsel's argument he would withdraw the question. And, when the law officer asked whether he had any other basis for pursuing the matter, trial counsel responded in the negative. Thereupon the law officer indicated he would sustain the objection. Since the question had been posed in the presence of the court members, he inquired whether defense counsel desired any cautionary admonition given to the court-martial. At the express behest of the defense the law officer simply dropped the matter. No mention was made thereof when the proceedings were resumed in open session, and the court members were not at that time instructed to disregard it.

The court-martial president, however, was not satisfied with the judgment of counsel for the parties and the law officer. Neither as to this matter, nor others, was he content to allow matters to rest. Instead, he embarked on his own inquisition, indicating dissatisfaction with the manner in which the case was developed and the facts that were presented to the court. In addition to posing questions himself, both with regard to minor details and other matters, the president indicated he would like certain witnesses recalled to the stand. Further, he indicated interest in the "arrest"—which trial counsel had, of course, abandoned—as follows:

"PRESIDENT: There is one other thing, as far as I am concerned.

263

There was considerable ado about a certain witness, and he was questioned pretty hard and, in my mind, sort of incriminated and so forth, or whatever you want to call it, but at the same time there was about to be a piece of paper introduced into the trial whereby the accused may have made a false statement on the witness stand—

"LAW OFFICER: That has been ruled upon, and that document will not be presented, and that question will be totally disregarded by the court and no inferences will be drawn from that question being asked.

"PRESIDENT: Then, may we recall the accused?

"LAW OFFICER: Not with respect to that, no, sir.

"PRESIDENT: He has made a statement, and I certainly think it ought to be checked out.

"LAW OFFICER: What area is it on which you wish to question accused, sir?

"PRESIDENT: As to whether or not, in the area of his past, whether he has been arrested and subjected to any punishment.

"LAW OFFICER: That is the area that will not be gone into, Colonel, that question was asked by the trial counsel and it will be totally disregarded and no inferences will be drawn from it.

"PRESIDENT: That is it."

With that backdrop, the import of the later dialogue prior to sentence becomes clear. The president's answers indicate his agreement to abide by the law officer's instructions, and all parties— indeed, even the defense—accepted the statement at face value. So, too, the transcript as a whole supports such a conclusion. The president—unwitting that it pertained merely to juvenile proceedings, and likewise uninformed of the legal basis for the objection thereto—had thought accused's record pertinent to the case before him. When the law officer ruled such document inadmissible, the senior court member conceded he was bound by the law officer's ruling and indicated he would abide by the instruction to disregard. However, he quite obviously felt his judgment superior to the law officer's. He insisted, not that accused's arrest record be admitted in evidence, but that the trial transcript reflect his disagreement with the law officer's ruling— apparently so that reviewing authorities might be apprised of his profound wisdom and that he had endeavored to set the law officer right as to a mistake by the latter. In short, the president's hostility seems to have been directed, not toward the accused, but against the law officer who announced a governing rule different from that the president would have himself applied.

There can be no question but that this record evinces an improper attitude. The error, however, lies not ■■■■■■■ ■ with the law officer. Rather, it must be placed at the feet of the adamant senior court member, who sought—unsuccessfully, fortunately— to run the trial at his own whim. While we need not, and on this record will not, ascribe improper motive or intent to the president of this court-martial, that is of little import. Regardless of whether his sole concern was that accused receive the fair and impartial trial to which the latter is entitled, the fact is that the president's behavior, as depicted by this transcript, cannot be approved. When one of the triers of fact so injects himself into the proceedings—even with the purest of motives—neither the best interests of the Armed Forces generally, nor of military justice specifically, are well served. We again direct attention to the admonition written by Judge Latimer for this Court in United States v Duncan, 9 USCMA 465, 26 CMR 245, for it is well suited to the situation here involved. As to the conduct of court members, they were there entreated not to attempt to usurp the functions of the law officer. We deem the following quotation appropriate:

". . . It is long past the time when members of courts-martial should seek to use their official position or rank to argue with and belittle

the rulings of law officers. They must accept the fact that the law officer is the judge of a military court and he rules on questions of law and other interlocutory questions. Members of courts are not monitors of his rulings. Their duty is to determine the guilt or innocence of the accused, and they should not depart from that role. If factual situations are underdeveloped or unclear, they are entitled to ask clarifying questions. However, there are proper means by which this may be done and, except in those instances where the Code gives the court the right to overturn a law officer's rulings, court members must accept rulings of law from the 'judge' and not become piqued at his decisions. Caustic comments neither add to the dignity of the court members nor the atmosphere of the courtroom drama." [9 USCMA at pages 467 and 468.]

As in the above-cited case, although the president overstepped his proper position, the law officer kept control of the proceedings. Possibly he could have been more firm, but we cannot criticize him on this record, for he made the best of what was obviously a difficult situation and, of course, he was in the best position to evaluate the circumstances in deciding on a course of action. He chose to question the court-martial in the nature of *voir dire* and, when it became apparent the president's pique was with him and not accused, the law officer properly adhered to his ruling and continued the proceedings, admonishing the court-martial to disregard the matter. See United States v Shaughnessy, 8 USCMA 416, 24 CMR 226.

Moreover, lest there be any question, we point out that the law officer's refusal to allow the evidence █ in question to be admitted was correct with regard to the basis upon which the prosecution offered it. The theory upon which he ruled herein, and in which trial counsel acquiesced, seems to have been simply that juvenile misdoings are inadmissible to attack the credibility of a witness generally. United States v Roark, supra; United States v Liscar, 11 USCMA 708, 29 CMR 524. Cf. United States v Cary, 9 USCMA 348, 26 CMR 128; United States v Trudeau, 8 USCMA 22, 23 CMR 246; Walder v United States, 347 US 62, 98 L ed 503, 74 S Ct 354 (1954). The law officer specifically inquired whether trial counsel contended the evidence to be admissible on any other ground but, when the latter did not assert any proper basis, the law officer quite properly took no further action. Certainly he cannot be censured for refraining from injecting himself into the proceedings by propounding theories of his own for either party. Further, the admissibility of the evidence was determined in an out-of-court hearing, and the matters there developed were of no concern to the members of the court in the proper discharge of their responsibility. Just as the law officer told the president, the correctness of a purely interlocutory ruling made by the law officer is the concern of other authorities, and subject to appellate review; it is not in any way within the province of the court-martial members. Article 51(b), Uniform Code of Military Justice, 10 USC § 851.

In any event, in view of the posture of the evidence against accused and his testimonial admissions, set forth at the outset of this opinion, there is no fair risk that the findings returned by the court-martial were improperly influenced. And, with regard to sentence, the apparent evaluation of this situation made by the parties as it developed at trial should be borne in mind. From that portion of the record first quoted hereinbefore, it is apparent the law officer sensed the possible danger arising from the president's comments. Accordingly, he once again admonished the court members that they must disregard the matter and follow his rulings. After going into the situation at length, he then inquired regarding the wishes of counsel in view of what had occurred. Being advised by both the prosecution and the defense that they desired nothing further, the law officer permitted the proceedings to continue. Certainly, with the defense having thus indicated its satisfaction with the law officer's action—an understand-

able course, in view of the favorable verdict already returned by the court-martial—we cannot say, as a matter of law, the climate was such that accused did not receive the fair hearing to which he was entitled.

We are further bolstered in this conclusion by the sentence actually assessed. The two specifications of larceny from the person of which accused was convicted will support punishment extending to dishonorable discharge, confinement at hard labor for six years, and total forfeitures. The court-martial imposed only bad-conduct discharge, twelve months' confinement, and monthly forfeitures of $50.00 for that same period. Further, the execution of the discharge has been suspended with provision for automatic remission. In view of the relatively lenient sentence adjudged by the court-martial and the convening authority's ameliorative action, it must be concluded the president's comments had little impact on the punishment outstanding against accused. See United States v Blau, 5 USCMA 232, 244, 17 CMR 232.

There is no fair risk the president's unseemly conduct unfairly influenced the proceedings to accused's prejudice. Cf. United States v Kentner, 12 USCMA 667, 31 CMR 253. Despite the senior court member's unfortunate comments —which, it should be once more emphasized, we unhesitatingly condemn— it is quite clear that affirmance of the decision of the board of review is compelled under the circumstances of the instant case, and the same is hereby ordered. That disposition cannot possibly work any miscarriage of justice.

Chief Judge QUINN and Judge FERGUSON concur.