UNITED STATES, Appellee,

v.

Ryan A. SMITH, Airman First Class,
U.S. Air Force, Appellant.

No. 99–0288.
Crim.App. No. S29464.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 19, 1999.

Decided March 14, 2000.

SULLIVAN, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE and EFFRON, JJ., and COX, S.J., joined.

For Appellant: *Captain Patience E. Schermer* (argued); *Colonel Theodore J. Fink* (on brief); *Colonel Douglas H. Kohrt* and *Lieutenant Colonel Jeanne M. Rueth.*

For Appellee: *Major Bryan T. Wheeler* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During August of 1997, appellant was tried by a special court-martial composed of officer members at RAF Mildenhall, United Kingdom. Contrary to his pleas, he was found guilty of making a false official statement and larceny, in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 USC §§ 907 and 921, respectively. He was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to airman basic. On September 11, 1997, the convening authority approved the sentence, and the Court of Criminal Appeals affirmed on November 24, 1998.

■ Review was granted in this case on April 7, 1999. Appellate defense counsel asked:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION AND ERRED BY ADMITTING SUBSTANTIALLY PREJUDICIAL EVIDENCE OF UNCHARGED WRONGS OF THE ACCUSED UNDER MILITARY RULES OF EVIDENCE 404(b) AND 403.

We hold that the military judge did not abuse his discretion in admitting evidence of a telephone-bill-payment incident involving appellant and his roommate to show his motive for committing the charged theft from a

different airman. *See United States v. Feld-man,* 788 F.2d 544, 556–57 (9th Cir.1986); *see generally United States v. Mitchell,* 172 F.3d 1104, 1107–10 (9th Cir.1999).

Appellant was charged with stealing money in excess of $100.00 from a fellow service-member, Airman First Class Michael Fryling, between February 1 and May 20, 1997. He made a pretrial motion to prohibit the Government from evidencing "the alleged loss of money" in his and Airman Giznik's room during the period noted above, which had been placed in his custody by Airman Giznik for payment of their phone bill. He requested suppression of this evidence because it suggested "uncharged misconduct," *i.e.,* that he stole or wrongfully appropriated money from Airman Giznik or that he failed to pay his just debt to the telephone company. The prosecution, in a written pretrial response, opposed this motion on the basis that this evidence did not show uncharged misconduct under Mil.R.Evid. 404(b),[1] but rather, appellant's temporary failure to account for nonpayment of the telephone bill and for the previously entrusted funds on the day of the alleged theft. It also asserted that evidence of appellant's possession of money on the day of the alleged theft and the amount thereof was clearly probative in this larceny case.

The record before us states the following in this regard:

> DC (Patterson): Thank you, sir. I would note at the outset that the defense is not challenging Airman Giznik's testimony, at least as we understand it would be elicited in its entirety. If he is competent to testify as to the financial state of Airman Smith, then we will not contest that and we can examine that on cross-examination. But we do, as noted in my motion, wish to exclude certain testimony, specifically that relating to the alleged loss of money in Airman Fryling's—excuse me, Airman Giznik's and Airman Smith's room at the time.

---

1. Manual for Courts–Martial, United States (1995 ed.). All Manual provisions are cited to the version in effect at the time of trial. The

* * *

> As stated in our motion, I believe that testimony is tantamount to uncharged misconduct. Although the Government states, "We're not going to ask him if he actually stole the money," they walk around it pretty close saying, "We're going to basically elicit testimony that Airman Giznik gave money to Airman Smith, that he left for awhile, he came back, asked for the money, Airman Smith supposedly didn't have it, and therefore, suggested he had to go somewhere to get the money."

> The only way that testimony is relevant from any point of view is if, in fact, the money was missing; and therefore, it would be evidence that Airman Smith did something unlawful with the money. He's not charged with theft from Airman Giznik. He's only charged with theft from Airman Fryling. So to suggest this is providing some kind of motive or opportunity, *is, in effect, uncharged misconduct because it tends to prove—it's pure character evidence. It tends to prove that because he's a thief in one regard, he must be a thief to Airman Fryling.*

(Emphasis added.)

The military judge questioned defense counsel as follows about his argument that this evidence was offered for impermissible character purposes:

> MJ: *It seems to me what the Government is alleging is that if this, in fact, took place, it represents a motive as to why he might want to steal something.* I believe 404(b)—the first exception to 404(b) is to prove motive. What does 404(b) say?

> DC(Patterson): Your Honor, there are certainly certain exceptions for uncharged misconduct for other purposes, but you would also have to get past the relevancy barrier. In this case, the evidence of some kind of unlawful taking is virtually nonexistent. *It's all through inference, in which case it creates a substantial danger of unfair prejudice*

---

1998 version is unchanged, unless otherwise indicated.

*suggesting that he's a thief when really there's virtually no evidence of it.* It's simply the fact that he says he wanted the money and Airman Smith did not have it immediately. He has no way of saying what he did with it or where it went; but it's only relevant from their point of view if it's missing. If it was not missing, then it has no impact. So it would be therefore unfairly prejudicial because it's a very vague allegation.

MJ: Military Rule of Evidence 404(b) says that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action [in] conformity therewith. It may, however, be admissible for other purposes such as proof of motive. *The Government alleges this is proving a motive, I believe. Isn't that what they're alleging?*

DC(Patterson): *That is my understanding,* but it would still have to be relevant. In this case, the charge is theft and this is another alleged type of theft which, in the minds of the members, could be given undue weight as being able to prove, "Well, if he did it on this one occasion, then he must have done it on these other occasions."

(Emphasis added.)

The military judge then ruled the evidence concerning the telephone bill was admissible as motive evidence. He said:

MJ: The relevancy barrier is that's the motive. All right, as Captain Patterson stated, counsel for both sides did provide me with Xerox copies of the motion in limine and the Government's response— or actually they were faxed to my office. *I did review them, and I've reviewed 404(b).* I've reviewed the evidence contained in here. Now, if this is, in fact,

what the evidence is going to go to, *then I believe it does go to prove motive.*

Under Military Rule of Evidence 403, I balanced and I believe the probative value of the evidence is not substantially outweighed by the possibility of prejudice to the accused. Therefore, your motion, at least at this time, is denied. If you see something at a later time that you want to bring to my attention, you may do so.

(Emphasis added.)

Airman Giznik later took the stand and provided the following testimony, as summarized by the Government in its response to the defense motion:

Amn Giznik [testified] that at approximately 0900 on 9 April 1997, the *Accused could not account for the fact the Accused had failed to pay their £180 dorm room phone bill,* even though Amn Giznik had given him money for that purpose, that the Accused could not account for Amn Giznik's £90, that the Accused told Amn Giznik he would get the money later, and that the Accused produced the money later that afternoon. Amn Giznik [testified] he accompanied Amn Michael Fryling to check his mail on 5 May 1997, that Amn Fryling received his April Keesler Federal Credit Union checking account statement that day, that Amn Fryling noticed unauthorized ATM withdrawals on his statement, and that *there was an unauthorized £200 ($332) ATM withdrawal made against Amn Fryling's* account o[n] the afternoon of 9 April 1997, shortly before *the Accused produced the missing £180 for the phone bill.*

(Emphasis added.)

Finally, the military judge instructed the members as to the limited use of this testi-

mony as motive evidence. He said in his findings instruction:

> Evidence that the accused may have misappropriated Airman First Class Giznik's money to pay British Telecom may be considered by you for the limited purpose of its tendency, if any, to prove the accused's motive in taking money from Airman First Class Fryling. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he therefore committed the offenses charged.

(Emphasis added.)

—— —— ——

As noted above, defense counsel made a pretrial motion in limine to suppress any testimony from a government witness, Airman Giznik, concerning a telephone-bill-payment incident with appellant, his roommate. He averred that Airman Giznik would testify that appellant was holding his phone bill money; that he did not pay that phone bill; and that appellant could not immediately locate that money when Airman Giznik asked for it on April 9, 1997. Defense counsel objected to such evidence as being tantamount to uncharged misconduct and unfairly prejudicial under Mil.R.Evid. 404(b) and 403. He argued that this evidence provided an inference that appellant "stole or wrongfully appropriated ... money belonging to [Airman Giznik]" and "failed to pay just debts."

We note that Airman Giznik's testimony was not offered by the prosecution to show any unlawful conduct by appellant, or his poor character and that he acted in conformity with that character by committing the charged offense. On the contrary, it offered this evidence to show appellant's financial acts around the time of theft and as part of the res gestae.[2] In addition, we note that the military judge did not admit this testimony to show appellant's bad character or for impermissible character purposes. Finally, the military judge expressly instructed the members that they could not consider evidence of a possible misappropriation of money by appellant for character purposes.[3] See Mil. R.Evid. 404(b).

Nevertheless, the military judge did give an instruction that evidence of a possible "misappropriation" of Airman Giznik's money by appellant could be considered for the limited purpose of proving his "motive" for committing the charged offenses. See generally United States v. Levitt, 35 MJ 114, 119 (CMA 1992); United States v. Wray, 9 MJ 361 (CMA 1980); cf. United States v. Brawner, 32 F.3d 602, 605 (D.C.Cir.1994) (duty of judge upon request to give limiting instruction concerning evidence of uncharged misconduct). Appellant asserts "the military judge abused his discretion by admitting the uncharged misconduct evidence about the chain of events regarding the telephone bill based upon his own theory of motive under Mil.R.Evid. 404(b)." Final Brief at 16 (emphasis added). Although we do not necessarily agree with the military judge's implied characterization of this evidence as uncharged misconduct evidence,[4] we will so assume for purposes of this appeal and address appellant's claim. See generally Huddleston v. United States, 485 U.S. 681, 687–88, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); United States v. Levitt, 35 MJ 108, 112–13 (CMA 1992).

**2.** This evidence was admissible as evidence of an abrupt change in financial circumstances at the time of the theft offense. See 1A Wigmore, Evidence § 154 at 1764 (Tillers rev.1983); 2 Wigmore, Evidence § 392 at 433 n. 8 (Chadbourn rev.1979); United States v. Jackson, 882 F.2d 1444, 1450 (9th Cir.1989)(res gestae evidence); United States v. Kloock, 652 F.2d 492, 495 (5th Cir.1981) (complete the story of the crime).

**3.** The military judge did not find as fact that appellant committed the averred misconduct, nor do we. See Art. 67, UCMJ, 10 USC § 867 (1994).

**4.** Courts have split on whether circumstantial or indirect evidence of misconduct is subject to the requirements of uncharged misconduct rules like Mil.R.Evid. 404(b). See Edward J. Imwinkelried, Uncharged Misconduct Evidence § 2:16 at 84 (Revised ed.1999). We need not decide that question today because even if circumstantial evidence is subject to this rule, as indicated in the military judge's ruling, appellant does not prevail.

Appellant first argues that the military judge abused his discretion because "[o]n his own, disregarding the prosecution's inadequate and vague offer and virtually cross-examining trial defense counsel, [he] identified the telephone bill chain of · events as Mil.R.Evid. 404(b) evidence and categorized it as relevant and admissible motive evidence." Final Brief at 17. He generally cites *United States v. Merriweather*, 78 F.3d 1070, 1075 (6th Cir.1996), for the proposition that the Government bears the burden of identifying a non-character purpose when it offers evidence suggesting uncharged misconduct for admission in a criminal trial. *See United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir.1985).

We agree with the Sixth Circuit that "[u]pon objection by the defendant, the proponent of the evidence, usually the Government, should be required to identify the *specific* purpose or purposes for which the Government offers the evidence of 'other crimes, wrongs, or acts.'" *Merriweather, supra* at 1076. Moreover, we also agree with that appellate court that "[b]y so requiring, we do not mandate hypertechnicality." *Id.* Here, it is not clear why the military judge did not admit this evidence in accordance with the Government's pretrial proffer (to show appellant's possession of different sums of money on the date of the charged larceny offense). Nevertheless, in our view, trial counsel satisfactorily identified motive as a specific alternative basis for admission of the challenged evidence at this court-martial. *See generally United States v. Brannan*, 18 MJ 181, 185 (CMA 1984).

In this regard, we note that trial defense counsel acknowledged in his written pretrial motion *in limine* that the Government intended to introduce this evidence for the limited purpose of showing "motive." Moreover, although trial counsel in his written response to this motion sought to admit the challenged evidence for a purpose related to motive (*i.e.*, circumstantial corroboration by showing possession of different amounts of money on day of theft), he did not reject the theory of admissibility previously attributed to him by the defense. *See Mitchell*, 172

F.3d at 1108–10 (contrasting motive evidence and abrupt-change-in-financial-circumstance evidence in a larceny case). Finally, trial counsel made no objection when the military judge, with agreement of defense counsel, made clear his understanding of the Government's particular purpose in introducing this evidence if the members found, in fact, that appellant misappropriated his roommate's money.

Appellant similarly argues that the military judge disqualified himself by *sua sponte* admitting the challenged evidence for a purpose not proffered by the prosecution. He argues that the military judge's ruling unfairly injected the judge into the proceedings on behalf of the prosecution and to the detriment of the defense. He cites *United States v. Butler*, 13 USCMA 260, 265, 32 CMR 260, 265 (1962) ("Certainly [the law officer] cannot be censured for refraining from injecting himself into the proceedings by propounding theories of his own for either party."), and asks this Court to reverse his conviction on this basis.

Again, we note our disagreement with appellant that the evidentiary theory relied on by the trial judge for admission of the challenged evidence was a judicial creation. In addition, we note that Article 39(a)(4), UCMJ, 10 USC § 839(a)(4), and Mil.R.Evid. 104(a) contemplate that the military judge determine the admissibility of evidence, which includes reasonable assessment of a party's position in a particular case. Accordingly, while we agree that the military judge should not be trying the prosecution's case, we simply do not agree that occurred in this case. *See United States v. Cooper*, 51 MJ 247 (1999).

Changing tack, appellant next asserts that the testimony of Airman Giznik was improperly admitted under Mil.R.Evid. 404(b) to show motive, in view of the three-prong test this Court articulated in *United States v. Robles–Ramos*, 47 MJ 474 (1998). He first argues that his purported misappropriation of Airman Giznik's money was not proven by a preponderance of the evidence. Our standard of review is whether sufficient evidence was admitted so the members could

find by a preponderance of the evidence that the misconduct occurred. *Id.* at 476, citing *United States v. Mirandes-Gonzalez,* 26 MJ 411, 414 (CMA 1988); *see generally Huddleston,* 485 U.S. at 690, 108 S.Ct. 1496.

Admittedly, there was no direct evidence that appellant misappropriated Airman Giznik's telephone money. There was, however, circumstantial evidence that appellant may have wrongfully appropriated the money entrusted to him to pay this bill. It was shown that the telephone service had been terminated; that appellant had not paid the bill as promised; that he could not produce the previously entrusted money on demand and could not immediately account for its whereabouts; and that finally, he later produced the money and his own share of the bill without adequate explanation. On the basis of this evidence, we conclude that a factfinder might reasonably find that appellant temporarily appropriated Airman Giznik's money for his own purposes rather than paying the telephone bill as promised. *United States v. Robles–Ramos, supra; see United States v. Hale,* 28 MJ 310, 311 (CMA 1989)(evidence of wrongful appropriation of a rental car).

■ Appellant's second argument under *Robles–Ramos* is that his purported misappropriation of Airman Giznik's telephone bill money still was not shown to be relevant to a "fact of consequence" in his trial for stealing money from Airman Fryling. *See Robles–Ramos, supra* at 476; *see generally United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989). He states that this evidence "went toward no specified element of the crimes charged." Final Brief at 18. Appellant did not admit that he withdrew money from Airman Fryling's account on April 9, 1997, and the military judge ruled that evidence appellant had financial difficulties was probative of a motive on his part to commit this larceny.[5] This is black letter law in larceny cases. *See* 1A Wigmore, *Evidence* § 117 at 1696 (Tillers rev.1983); 2 Wigmore, *Evidence* § 392 at 430 (Chadbourn rev.1979). Even trial defense

counsel conceded this point at trial. *See generally United States v. McMahon,* 938 F.2d 1501, 1507–08 (1st Cir.1991).

A question remains, however, as to how evidence of appellant's purported wrongful appropriation of Airman Giznik's telephone payment was relevant to show his financial difficulties leading to the charged theft. We think that was obvious. This evidence showed the extraordinary degree of financial pressure that was applied to appellant on the actual day of the alleged theft from Airman Fryling. If he failed to produce the money entrusted to him by his roommate, Airman Giznik could expose him to command embarrassment, if not criminal prosecution, for his misuse of a fellow soldier's money. *See* 2 Wigmore, *Evidence* § 392 at 432 n. 6; *Feldman,* 788 F.2d at 556–57; *see generally Mitchell,* 172 F.3d at 1109 (evidence showed that defendant in *Feldman* was being "squeezed," not just that he would be better off with more money). Accordingly, we conclude this possible "uncharged wrongs" evidence was highly relevant to establish appellant's timely and unique motivation for committing the charged larceny. *See* 1A Wigmore, *Evidence* § 117, *supra* (discussing proof of emotion in a person likely leading to an act by that person).

■ Appellant's third argument under *Robles–Ramos* is that Airman Giznik's testimony suggesting possible misappropriation by appellant was inadmissible under Mil.R.Evid. 403. *See United States v. Reynolds, supra.* He argues that "the probative value of the evidence [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members." He particularly faults the trial judge for providing "no real analysis anywhere on Mil. R.Evid. 403; just conclusory statements." In addition, he contends that this evidence was not necessary to show appellant's poor financial condition and that "its sole effect"

---

5. Appellant did not particularly admit to withdrawal of funds from Airman Fryling's account on April 9, 1997, nor was there photographic evidence of his use of the ATM on that date.

Accordingly, there were material issues in this case whether Airman Fryling's money was stolen on that date and whether appellant did it.

was to "paint[ ] Appellant as a thief and a liar." Final Brief at 19–20.

In addressing these complaints, we initially note that the decision to admit or exclude evidence under Mil.R.Evid. 403 is imparted to the sound discretion of the trial judge. *See United States v. Whitner,* 51 MJ 457, 461–62 (1999). An explanation of his ruling on the record is preferred, but we have not required such an explanation as a predicate for our review. *See United States v. Bins,* 43 MJ 79, 85–86 (1995). In either event, we review the record of trial for a clear abuse of discretion by the trial judge. *Id.* Here, we see no such abuse in the admission of Airman Giznik's telephone-bill-payment testimony.

In this regard, we initially note our disagreement with appellate defense counsel's assertion that it was "unclear what issue the [challenged] evidence would be used to prove." Final Brief at 19. The military judge ruled and instructed the members that any evidence of a possible misappropriation could only be used for "its tendency, if any, to prove the accused's motive in taking money from Airman First Class Fryling." *See* Mil.R.Evid. 104(a) (military judge determines admissibility of evidence questions). We also disagree with counsel that this evidence had low probative value because other evidence would show appellant's poor financial condition. This evidence had great probative value because it revealed the true extent of appellant's financial desperation on the day of the alleged theft, *i.e.,* an immediate pressure, far beyond simple insolvency. *See Mitchell, supra* at 1109, citing *United States v. Feldman, supra.* Lastly, we disagree that this evidence "had" to be used by the members as propensity evidence. It might have,

but the military judge carefully instructed the members that it could not be used for this purpose. *See Whitner, supra* at 462 (limiting instructions precluding impermissible character use of evidence are proper consideration in Mil.R.Evid. 403 ruling); *cf. United States v. Johnson,* 27 F.3d 1186, 1193–94 (6th Cir.1994) (multiple instructions given which were contradictory).

In conclusion, appellant's core complaint in this case is that he was found guilty of stealing more than $100.00 from Airman Fryling because the prosecution was allowed to introduce evidence suggesting a possible prior misappropriation of Airman Giznik's money. We note, however, that the prosecution also evidenced approximately 22 unauthorized withdrawals over a 4–month period from Airman Fryling's ATM account, amounting to more than $1,000.00. Airman Fryling further testified that he did not give appellant his ATM card, his pin number, or permission to withdraw funds from his account. Finally, appellant, in a pretrial statement, admitted making numerous withdrawals from Airman Fryling's account during this period but asserted that he was inexplicably given carte blanche authority from the alleged victim to do so. In these circumstances, we seriously doubt that even the erroneous admission of the challenged evidence under the stringent conditions directed by the military judge substantially prejudiced appellant.[6] *Whitner, supra* at 462 (other evidence in case coupled with appropriate limiting instructions may negate any prejudice from an erroneous Mil.R.Evid. 403 ruling).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

**6.** Neither trial counsel nor defense counsel referred to this evidence or the judge's ruling in their closing arguments.