# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––

**No. ACM S32632 (f rev)**

––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Kevin LI**
Airman First Class (E-3), U.S. Air Force, *Appellant*

––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 31 October 2022

––––––––––––––––

*Military Judge:* Matthew D. Talcott (court-martial); Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 3 October 2019 by SpCM convened at Dyess Air Force Base, Texas. Sentence entered by military judge on 18 October 2019 and reentered on 13 May 2021: Bad-conduct discharge, confinement for 45 days, and reduction to E-1.

*For Appellant:* Major David L. Bosner, USAF; Major Benjamin H. DeYoung, USAF; Major David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Alex B. Coberly, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and CADOTTE, *Appellate Military Judges*.

Judge CADOTTE delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge POSCH joined.

––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––

CADOTTE, Judge:

Contrary to Appellant's pleas, a special court-martial composed of officer members found Appellant guilty of one specification of wrongful distribution of lysergic acid diethylamide (LSD) on divers occasions and one specification of wrongful introduction of LSD with the intent to distribute it, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1,2] The findings of guilty all pertained to offenses committed in 2018. Appellant was sentenced to a bad-conduct discharge, confinement for 45 days, and reduction to the grade of E-1. On 16 October 2019, the convening authority issued a Decision on Action memorandum in which he took "no action on the sentence." On 18 October 2019, the military judge signed the original entry of judgment.

This case is before the court for a second time. In his initial appeal to this court, Appellant raised three assignments of error: (1) that the military judge abused his discretion when he admitted pictures of unidentified pills to rehabilitate a witness's credibility; (2) that the military judge abused his discretion when he determined testimony about the impact of Appellant's offenses was relevant in findings; and (3) that the convening authority failed to take action on the sentence for offenses committed prior to 1 January 2019. Our court remanded this case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the third issue. *United States v. Li*, No. ACM S32632, 2021 CCA LEXIS 207, at *8 (A.F. Ct. Crim. App. 30 Apr. 2021) (unpub. op.).[3] We deferred deciding the other raised issues. *Id.* at *2–3.

After the court's remand, the convening authority signed a new Decision on Action memorandum on 7 May 2021 approving the sentence in its entirety. On 13 May 2021, a new entry of judgment (EoJ) was completed. Subsequently, the record of trial was returned to this court. We find that the convening

---

[1] All references in this opinion to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was also found not guilty of wrongful use of LSD in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

[3] Subsequent to our remand, the United States Court of Appeals for the Armed Forces (CAAF) decided *United States v. Brubaker-Escobar*, 81 M.J. 471 (C.A.A.F. 2021) (per curiam). In *Brubaker-Escobar*, the CAAF held the convening authority committed a procedural error by taking no action on the sentence, when the case involved a conviction for at least one offense committed before 1 January 2019 and referral was after 1 January 2019. *Id.* at 475. The CAAF tested the procedural error for material prejudice. *Id.*; *see also United States v. Aumont*, 82 M.J. 37 (C.A.A.F. 2021) (mem.) (remanding to our court to determine whether the procedural error of taking no action on the sentence materially prejudiced a substantial right of the appellant).

authority's action and the new EoJ remedy the error identified in our earlier opinion. We find the convening authority's 7 May 2021 action on the sentence complies with applicable law, and that the 13 May 2021 EoJ correctly reflects the sentence and post-trial actions taken in this case. We further find that no additional modifications are necessary.

On 1 September 2021, Appellant submitted a supplemental brief to this court "specifically preserv[ing] and maintain[ing]" the issues raised in his initial brief, and raising an additional issue:[4] (4) that Appellant was deprived of his right to a unanimous verdict as guaranteed by the Sixth Amendment,[5] the Fifth Amendment's Due Process Clause,[6] and the Fifth Amendment's right to equal protection. We have carefully considered issues (2) and (4) and find neither requires further discussion nor warrants relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

We now address the remaining assignment of error—whether the military judge abused his discretion when he admitted pictures of unidentified pills to rehabilitate a witness's credibility. We find no error that materially prejudiced a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

The Air Force Office of Special Investigations (AFOSI) initiated an investigation into Appellant after a former technical school classmate of Appellant's, Airman First Class (A1C) HM, reported to AFOSI that he observed a photo on Appellant's Snapchat[7] social media account which depicted what A1C HM believed to be LSD. At Appellant's court-martial, the Government presented evidence that Appellant made admissions that he sold drugs while in the military and used the "dark web" to obtain them.

The Government's case included the testimony of three Airmen who were granted testimonial immunity. These Airmen testified about Appellant's distribution of LSD in that Appellant sold them LSD on base. In addition, the Government called three witnesses who testified generally about their knowledge of Appellant's drug-related activities and Appellant's statements to

---

[4] Appellant personally raised this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] U.S. CONST. amend. VI.

[6] U.S. CONST. amend. V.

[7] Snapchat is a social media application on which users can post pictures, photographs, and communicate with others.

them about his drug activities. AFOSI Special Agent (SA) TA also testified regarding evidence obtained from Snapchat.

A1C HM testified in the Government's case in chief, explaining that he attended technical school with Appellant in 2017 and maintained a friendship with Appellant thereafter. A1C HM testified that after technical school, he was stationed at Little Rock Air Force Base (AFB), Arkansas, and Appellant was stationed at Dyess AFB, Texas. Although they were assigned to different duty locations, they remained in contact via Snapchat. A1C HM testified he viewed Snapchat posts on Appellant's account once or twice a week. According to A1C HM, Appellant's Snapchat "handle" was "swagdog."

A1C HM testified about a post he viewed on Appellant's account on 10 March 2018. He described Appellant's post as an image that looked like "a small sheet of what appeared to be LSD that was a blue tint, and it was almost like postage with perforated edges." After viewing this image, A1C HM confronted Appellant telling him, "This is a very serious thing, and if I don't say anything, somebody else will, and this could come back to bite you." Appellant responded, "It doesn't stay in your system for very long, about 12 hours." After viewing the image, A1C HM reported what he saw to the AFOSI detachment at Little Rock AFB, and AFOSI initiated an investigation of Appellant.

Later, on cross-examination, trial defense counsel (TDC) questioned A1C HM about the Snapchat handle "swagdog" and its link to Appellant. In the following exchange, TDC questioned A1C HM as to his knowledge of the identity of the person communicating under the handle "swagdog:"

> [TDC]. [A1C HM], these pictures that you are talking about that you saw on [Appellant]'s Snapchat, you said his Snapchat handle was "swagdog"?
>
> [A1C HM]. Yes.
>
> [TDC]. You were communicating with swagdog?
>
> [A1C HM]. Yes.
>
> [TDC]. I know that's kind of a weird distinction there. But you never actually saw [Appellant] sitting at his computer?
>
> [A1C HM]. Yes, I would from that handle.
>
> [TDC]. You saw swagdog?
>
> [A1C HM]. Yes.
>
> [TDC]. But you didn't know who was typing for swagdog?
>
> [A1C HM]. I knew it was [Appellant] based on the images that he would send, like selfies he would send of himself, so . . . .

4

[TDC]. Well, the selfies, right, these particular images that you're talking about, you have no idea who was on the other end of the computer typing. It could have been anybody?

[A1C HM]. Yes, sir.

. . . .

[TDC]. So you know that the pictures -- you saw the pictures on your Snapchat on March 10th?

[A1C HM]. Yes.

[TDC]. But you don't know where the person was who was actually snapping, at what place they were at. They could have been anywhere in the world?

[A1C HM]. Yes, sir. Obviously, somewhere.

(First omission in original).

Following the initial testimony of A1C HM, a panel member asked the following question: "Did any phraseology or verbiage change on swagdog's account when pictures or drugs were shown, or was it the same phraseology as selfies/earlier photos?" A1C HM responded, "It was the same phraseology as the earlier photos."

During one of the redirect examinations, trial counsel introduced Prosecution Exhibit 1. Prosecution Exhibit 1 consists of a photograph of A1C HM's phone. Most of the content on the phone has been redacted, but near the top there is a cartoon image of a person wearing sunglasses, alongside the word "Li." A1C HM testified that the cartoon figure was a "bitmoji" associated with Appellant and Appellant's Snapchat account. A1C HM explained how he knew the Snapchat account was associated with Appellant:

[TC]. Okay. So you said there is a handle form. Is it a smaller version, then?

[A1C HM]. Yes.

[TC]. And it's right next to who's name?

[A1C HM]. [Appellant]'s.

[TC]. And how do you know it's [Appellant]?

[A1C HM]. Because that -- it was the same number. Since his phone was connected to his contacts and my Snapchat was connected to my contacts, it was the same username, just with Airman Li's phone number attached.

[TC]. So because [Appellant] gave you his phone number and you put him into your phone as Li, is that why his name shows up on this photo?

[A1C HM]. Yes.

[TC]. So is that because this photo is associated with the Snapchat account that you know to be [Appellant]'s?

[A1C HM]. Yes.

[TC]. The Snapchat that is linked to his phone number?

[A1C HM]. Yes.

[TC]. The phone number that he gave you?

[A1C HM]. Yes.

During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing, trial counsel requested permission to introduce Prosecution Exhibit 2, which consisted of two images—one depicting 21 rectangular green pills haphazardly strewn on a wood surface, and a second depicting more than 50 oblong blue pills. The images do not include information as to what substance the pills contain. The images were recovered by AFOSI after it executed a search warrant of Appellant's Snapchat account. Trial counsel argued defense counsel "opened the door" to the images' admission by cross-examination questions that addressed whether A1C HM actually was aware of the content of Appellant's Snapchat account. Trial counsel's purpose in introducing the images was to rehabilitate A1C HM's credibility with testimony that these images were viewed by A1C HM on the "swagdog" Snapchat account, and the images were also provided to AFOSI from Snapchat in response to the search warrant for images on Appellant's account. Trial defense counsel objected to the admission of Prosecution Exhibit 2.

After considering arguments from counsel, the military judge conducted a Mil. R. Evid. 403 balancing test on the record, stating:

> I have conducted a [Mil. R. Evid.] 403 balancing on these pictures of pills. For the reasons we've discussed, I find that these pictures are highly relevant to an important issue for the members to resolve, which is [A1C HM]'s access to [Appellant]'s Snapchat account and his ability to observe things that were posted on the Snapchat account and [A1C HM]'s credibility.
>
> I find these pictures, given that I anticipate or I happen to know that [AFOSI] would be able to say these same pictures were found and provided by Snapchat Inc. during a search warrant,

that it does corroborate [A1C HM]'s testimony if he can say, "I also saw those on his account."

There is the danger of unfair prejudice given that these are a bunch of pills. I have limited the witness's testimony to not describe what he suspects these pills to be. I don't anticipate anyone is going to be able to testify these are Xanax or controlled substances or narcotics or illegal.

After the military judge's ruling, A1C HM was shown the two images included in Prosecution Exhibit 2 and testified to the court members that he recognized the images as images posted on Appellant's Snapchat account. Immediately after A1C HM's testimony regarding Prosecution Exhibit 2, and after receiving a draft limiting instruction from Appellant's counsel, the military judge provided the members with the following limiting instruction:

Members, with regard to the pictures of pills you've been provided in Prosecution Exhibit [ ] 2, I'm instructing you not to speculate as to what those pills are. Do not discuss what those pills may or may not have been. What those pills are is irrelevant and should not be part of your deliberations or consideration of the evidence in this case.

During findings instructions, the military judge repeated this limiting instruction to the members.

After A1C HM's testimony, SA TA testified that he served a search warrant on Snapchat Inc. to provide messages and images from Appellant's account. In response, Snapchat provided responsive materials which included statements and images from Appellant's account documenting his involvement with LSD. Among the images provided from Appellant's Snapchat account were the images included in Prosecution Exhibit 2.

## II. DISCUSSION

### A. Law

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F.

2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

The military judge may exclude relevant evidence when "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Mil. R. Evid. 403. "[T]he decision to admit or exclude evidence under Mil. R. Evid. 403 is imparted to the sound discretion of the trial judge." *United States v. Smith*, 52 M.J. 337, 344 (C.A.A.F. 2000) (citation omitted). Military judges have "wide discretion" in applying the Mil. R. Evid. 403 balancing test; however, military judges are afforded less deference when they do not explain their analysis on the record, and we give them no deference when they do not conduct the analysis at all. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

"Applying nonconstitutional harmless error analysis, we conduct a de novo review to determine whether this error had a substantial influence on the members' verdict in the context of the entire case." *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007) (citations omitted). We consider four factors to determine whether prejudice resulted from an erroneous evidentiary ruling: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citing *United States v. Berry*, 61 M.J. 91, 98 (C.A.A.F. 2005)).

**B. Analysis**

Appellant argues the military judge abused his discretion in admitting Prosecution Exhibit 2. He claims the two photographs of "a large number of unidentified pills" contained limited probative value, and that the members would "assume[ ] that the photos were nefarious," risking unfair prejudice. Thus, Appellant argues, the probative value of the photographs "was substantially outweighed by the danger of unfair prejudice." We disagree and find the military judge did not abuse his discretion in admitting the exhibit.

After considering argument from counsel, the military judge conducted a Mil. R. Evid. 403 balancing test before he admitted the exhibit. The military judge explained on the record that he was admitting the two photographs because he found the pictures were "highly relevant to an important issue for the members to resolve," which was whether A1C HM had "access to [Appellant]'s Snapchat account and his ability to observe things that were posted on the Snapchat account and [A1C HM]'s credibility." The military judge's ruling was not "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." *See McElhaney*, 54 M.J. at 130. We disagree with Appellant's claim on appeal that "members likely assumed that the photos were nefarious." The military judge twice gave a proper limiting instruction to the panel instructing them "not to speculate as to what those pills are." Absent contrary evidence, we may

presume the court members followed the military judge's instruction on this issue. *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000).

Even if we found the military judge abused his discretion by admitting Prosecution Exhibit 2, we would find no prejudice resulted. The Government's case was strong, considering the testimony of multiple Airmen regarding Appellant's distribution of LSD. That testimony was bolstered by the evidence of Snapchat messages and photographs recovered from Appellant's account by AFOSI. Comparatively, the Defense's case was weak. Also, the materiality and quality of Prosecution Exhibit 2, regarding possible improper propensity evidence, was not such that the exhibit influenced the findings. The Government's findings argument regarding the exhibit was minimal and was focused on the exhibit's permissible purpose. Furthermore, the military judge's limiting instruction—that the identity of the pills depicted in the exhibit was not relevant and that the members should not speculate as to the identity of the pills— cured any potential improper consideration by the members. After considering all the factors, we find that the exhibit did not substantially influence the members' findings, and thus find no substantial prejudice to Appellant.

## III. CONCLUSION

The findings and sentence as entered on 13 May 2021 are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court